**Luis Humberto GALVAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–97–00066–CR.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 4, 1999.

Decided Feb. 5, 1999.

Carlos L. Correa, Attorney at Law, Houston, for appellant.

Keli Pool Roper, Assistant District Attorney, John B. Holmes, District Attorney-Harris County, Houston, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

Justice GRANT.

### NATURE OF THE CASE

Luis Humberto Galvan, alias Abel Lopez, was charged with the felony offense of bail jumping. Galvan entered a plea of not guilty, and the case was tried before a jury. The jury found Galvan guilty, and the court assessed his punishment at confinement for sixty years in the Texas Department of Criminal Justice, Institutional Division. No timely notice of appeal was filed. However, the Texas Court of Criminal Appeals granted an out-of-time appeal, and this appeal followed. *Ex parte Galvan*, No. 72,670 (Tex. Crim.App. Feb. 12, 1997)(not designated for publication).[1]

1. Citing for informational purposes only.

### EVIDENCE SUMMARY

Galvan was arrested for burglary of a motor vehicle in August of 1990. Galvan gave false information to the police, telling them that his name was Abel Lopez and his date of birth was October 12, 1957. Galvan had two prior felony convictions (July 1987 and August 1989) for burglary of a motor vehicle. However, because the record reflected that "Abel Lopez" had no prior criminal record, Galvan was released on a $2,000 cash bond, which was posted by his wife.

Galvan failed to appear for court. He remained at large for six months until he was arrested in March of 1991. Galvan was indicted and convicted for bail jumping and burglary of a motor vehicle. This appeal concerns only the bail jumping conviction.

Galvan filed a motion to quash the indictment for bail jumping. He contended he was being selectively prosecuted for bail jumping due to his race and nationality. During the hearing on the motion to quash, Galvan called several district judges to testify as to the rarity of prosecutions for bail jumping. The deputy district clerk, Ken Heuitt, testified that every year thousands of people violated the same statute and had their bonds forfeited. Heuitt also testified to a report based upon statistical data compiled in the criminal division of the district clerk's office, which contained cumulative figures from all Harris County Court bond forfeitures during a period beginning January 1, 1985 through April 30, 1992. Exhibits were used during the motion to quash which contained summaries of this information. The exhibits did not contain information on race or ethnicity. A bondsman testified during the motion to quash that the district attorney's office was reluctant to prosecute bail jumping cases, even if a willful absconder was involved.

A question as to Galvan's ethnicity was raised during the motion to quash. Galvan offered no proof of his race or ethnicity, other than his counsel's *opinion* that Galvan was ethnically Hispanic. Counsel did not prove or disprove whether Galvan was

French, Spanish, or any other specific ethnicity or race.

At the conclusion of the motion to quash, the trial court found that Galvan had lied about his identity to the magistrate when the bond was set, failed to appear in September of 1990, and remained at large until he was arrested in March of 1991. The court entered the following ruling:

> The Court finds not one scintilla of evidence to support the proposition that this bail jumping charge is based upon selective prosecution . . .

> The court finds nothing in the course of two days of hearing in this case, . . . nothing in any of the evidence adduced to indicate any sort of pattern of discriminatory action or prosecution by the Harris County district attorney's office, nothing to indicate any bias or prejudice against the defendant, based on race, religion, ethnicity, gender, physical condition. There's absolutely nothing. . . . .

Before the jury was selected, Galvan requested that the jury be allowed to hear evidence of selective prosecution. However, the trial court granted the State's motion in limine to exclude the jury hearing evidence of selective prosecution. At the conclusion of the guilt/innocence phase, Galvan requested that a question concerning selective prosecution be submitted to the jury. This request was denied by the trial court.

During the punishment phase, Galvan introduced evidence from Professor Matthew Caligur. Caligur testified that, after conducting research on the matter, he believed a majority of the criminal cases filed for bail jumping were against Hispanics, and he further stated that harsher penalties were imposed against Hispanics. Caligur's research indicating that the majority of defendants in bail jumping cases were Hispanic was solely based on an analysis of surnames of the defendants rather than the actual ethnicity of the defendants.

Galvan filed a motion for new trial complaining of selective prosecution. Galvan did request a hearing on his motion for new trial, but did not attach an affidavit to the motion showing the truth of the grounds asserted. The trial court did not make a ruling on the motion for new trial, and the motion was overruled by operation of law without a hearing.

Galvan's counsel also failed to file a timely designation of record or request for the court reporter to include defense Exhibits 1 and 2 in the record. During post-conviction hearing in January of 1998, it was discovered that these two exhibits had been destroyed in October of 1995 and February of 1996 by the district clerk's office. The clerk's office indicated the exhibits were destroyed pursuant to Article 2.21(e)(2) of the Texas Code of Criminal Procedure, which allows disposal of exhibits on or after the second anniversary of the date on which a conviction becomes final in the case, if the case is a noncapital felony for which the sentence imposed by the court is greater than five years. TEX.CODE CRIM. PROC. ANN. art. 2.21(e)(2) (Vernon Supp. 1999). The trial court ordered the district clerk's office to attempt to reconstruct the statistical report which was introduced as defense Exhibits 1 and 2 during the motion to quash. During a hearing in February of 1998, Heuitt, who originally brought the exhibits to trial and testified concerning them, testified that his office could not reconstruct the exact documents which were offered at trial.

## ANALYSIS

Galvan first contends that the trial court erred in failing to allow evidence of selective prosecution as a defense because selective prosecution is an issue which the jury should be allowed to consider. He also argues that the jury is the exclusive judge of the facts proved and the weight of the testimony.

■ Galvan cites to *State v. Malone Serv. Co.*, 829 S.W.2d 763, 770 (Tex.1992). In *Malone*, the Texas Supreme Court held selective prosecution is a matter for jury consideration. *Id. Malone* also states "at least some federal courts have assigned the issue to the judge." *Malone*, 829 S.W.2d at 767 n. 5. This Texas Supreme Court holding was in a civil case and is not binding in the present case. The Texas Court of Criminal Appeals has not decided procedurally how, when, or by whom a selective prosecution claim must be heard.

A review of the federal courts reveals a number of circuits have held that selective prosecution "relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution." *United States v. Bertoli,* 854 F.Supp. 975, 1076 (D.N.J.1994); *see United States v. Regan,* 103 F.3d 1072, 1082 (2d Cir.1997); *United States v. Jones,* 52 F.3d 924, 927 (11th Cir.1995); *United States v. Washington,* 705 F.2d 489, 495 (D.C.Cir.1983); *United States v. Cleveland,* No. 96–207, 1997 WL 253124 (E.D.La. May 14, 1997). The United States Supreme Court has observed that a "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong,* 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). The issue of selective prosecution has no bearing on the determination of factual guilt, and it is an issue for the court to decide, not an issue for the jury. *Jones,* 52 F.3d at 927; *Washington,* 705 F.2d at 495; *United States v. Berrigan,* 482 F.2d 171, 175 (3rd Cir.1973). In other words, selective prosecution only brings into consideration the State's purpose in prosecuting the defendant or the propriety of the "institution of prosecution." *Berrigan,* 482 F.2d at 175.

■ Galvan also relies on *Gawlik* for his argument that a jury was required on this defense. *Gawlik v. State,* 608 S.W.2d 671, 673 (Tex.Crim.App.1980). Galvan's contention is a misinterpretation of *Gawlik.* The Court of Criminal Appeals held in *Gawlik* that a defendant who did not raise selective prosecution at trial could not complain for the first time on appeal. *Gawlik,* 608 S.W.2d at 673. *Gawlik* does not require evidence to be presented before a jury. *Id.* The argument of selective prosecution can be raised at different times at the trial court in several ways. The defendant who believes he is being subjected to selective prosecution must do something to present his case to the court. *Id.* He can raise this argument in a motion to quash the indictment. *See Covalt v. State,* 877 S.W.2d 445, 446 (Tex.App.-Houston [1st Dist.] 1994, no pet.). This would allow the judge to examine the evidence and determine if selective prosecution exists. If sufficient evidence does exist, the judge can grant the motion to quash, and the indictment will be quashed and the defendant will prevail. If the judge denies the motion to quash, then the defendant has preserved his complaint for appeal. The defendant can also raise selective prosecution in a motion for new trial or other method of making a record. *Satterwhite v. State,* 726 S.W.2d 81, 84 (Tex.Crim. App.1986), *rev'd on other grounds,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). The defendant may bring the issue of selective prosecution to the court's attention, but may not demand that the jury consider the complaint. *See Jones,* 52 F.3d at 927; *Washington,* 705 F.2d at 495; *Berrigan,* 482 F.2d at 175.

In the present case, Galvan did raise the issue of selective prosecution in a motion to quash, in a motion for new trial, and during the punishment phase of his trial outside the presence of the jury. The only time he was denied the opportunity to make his selective prosecution argument was during the jury trial on guilt or innocence. Galvan has preserved his complaint for appeal, but his argument that the jury should have been allowed to consider the selective prosecution argument fails because it is not a proper issue for the jury to consider. Galvan's first point of error is overruled.

In his second point of error, Galvan contends that the trial court erred in holding that he failed to successfully show a prima facie case of selective prosecution in his motion to quash the indictment.

■ Galvan argues that the threshold burden of "some evidence that similarly situated defendants of other races could have been prosecuted but were not" has been met in this case. Galvan argues that the inquiry in selective prosecution cases should not be limited to indirect methods, but that courts may instead inquire into circumstantial and direct evidence of intent. *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Galvan complains that other indirect evidence exists, but could not be introduced

because it was unavailable to him.[2] Galvan contends that despite the unavailable evidence, the evidence he produced on selective prosecution was sufficient to make the required prima facie showing. In order to show a prima facie case for selective prosecution, a defendant must show (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith. *Gawlik*, 608 S.W.2d at 673. The court in *Gawlik* explains these two requirements as applied by the Texas Court of Criminal Appeals. *Gawlik*, 608 S.W.2d at 673; *see United States v. Greene*, 697 F.2d 1229, 1234 (5th Cir.1983); *Covalt*, 877 S.W.2d at 446; *see also Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480. A presumption exists that prosecutions are proper. *Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480. An appellant claiming selective prosecution must provide "exceptionally clear evidence" that the prosecution was initiated for an improper reason. *County v. State*, 812 S.W.2d 303, 308 (Tex.Crim.App.1989).

Galvan failed to give any proof of others similarly situated who have not been proceeded against. He was able to introduce raw numbers and frequencies of bail jumping prosecutions, as well as testimony about the rarity of prosecution in bail jumping cases, but was unable to establish that these other offenders had lied about their identity, remained at large for over six months, were habitual offenders, and were not prosecuted. The rarity of prosecution can support a finding of discriminatory intent, although alone it

may not necessarily be a sufficient basis for such a finding. *Covalt*, 877 S.W.2d at 446–47; *see also Branch Ministries, Inc. v. Richardson*, 970 F.Supp. 11, 17 (D.C.Dist.1997). In this case, the only evidence that Galvan produced dealt with the 'rarity' of bail jumping prosecutions.[3] Galvan's situation was unique. In fact, an inference could be made from the record that Galvan intended to jump bail because the fraudulent representations would make it extremely difficult to find him at a later date. This Court finds the first requirement to establish a prima facie case was not met.

The second prong of selective prosecution requires Galvan to show that the government's discriminatory selection of him for prosecution was invidious or in bad faith. *Gawlik*, 608 S.W.2d at 673. Galvan attempted to show that he was singled out because of his race or ethnicity. However, he never introduced any evidence establishing his ethnicity or race.[4] Without evidence of his race, he cannot prove he was discriminatorily selected because of his race.

After a thorough review of the evidence introduced at the motion to quash and the punishment phase, Galvan failed to meet either prong of the two prongs outlined in *Armstrong* or *Gawlik*. Galvan was charged with a heavy burden to produce exceptionally clear evidence that the decision to prosecute him was based on an improper reason; he failed to carry this burden. Galvan's second point of error is overruled.

Galvan contends in his third point of error that the trial court erred by not holding a hearing on his motion for new trial. This

2. Galvan complains that the prosecutor's office would not release to him information about demographics in other cases. He also complains that with the demographics information Caligur's research may have reached a conclusion that further supported Galvan's position, and he should have been allowed to introduce it during a motion for new trial hearing. No hearing was held on the motion for new trial.

3. During the motion to quash, Galvan did not put on any evidence of race or ethnicity. Later, Galvan introduced evidence during the punishment phase, but that evidence was questionable because the "expert" based his findings on sur-

names. There was no evidence that Hispanic surnames are proof of race or ethnicity.

4. Galvan's counsel failed to get a subpoena for its expert witness and thus did not insure his appearance at the hearing on the motion to quash. The judge allowed the hearing to continue for two days. Galvan's counsel failed to call his expert, who was available on the first day, and failed to produce him on the second day. The court asked counsel to call his next witness, but Galvan could not produce the expert, so he had to rest. The court concluded the hearing and made its findings without the expert's testimony.

motion claimed selective prosecution and was overruled by operation of law without a hearing.

 The standard of review for failing to hold a hearing on a motion for new trial is abuse of discretion. *Garcia v. State,* 960 S.W.2d 329, 333 (Tex.App.-Corpus Christi 1997, no pet.); *see Reyes v. State,* 849 S.W.2d 812, 815–16 (Tex.Crim.App.1993). Galvan was able to make a lengthy record concerning the matter of selective prosecution during the hearing on the motion to quash and during testimony at the punishment phase. He did not indicate in his motion for new trial that he desired to introduce any new evidence. He only reiterated his initial allegations of selective prosecution. Galvan did not put the court on notice of the grounds on which he contended a new trial should be granted. The trial court did not abuse its discretion in allowing a motion for new trial to be overruled by operation of law when the movant fails to state the grounds. *See Jordan v. State,* 883 S.W.2d 664, 665 (Tex.Crim.App.1994); *see also Sandoval v. State,* 929 S.W.2d 34, 36 (Tex.App.-Corpus Christi 1996, pet. ref'd). Galvan's third point of error is overruled.

 In his fourth point, Galvan contends that the case should be remanded for a *Batson*[5] hearing on the issue of selective prosecution with the opportunity for discovery. Galvan relies on the Supreme Court's holding in *Armstrong* that if a defendant makes a sufficiently strong threshold showing of selective prosecution, the court should order the State to "assemble from its own files documents which might corroborate or refute the defendant's claim." *Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480. However, Galvan did not make a strong threshold showing that selective prosecution was applied to him. Galvan's fourth point is overruled.

 In his fifth point of error, Galvan contends that this Court should remand this case to allow a disinterested judge to consider all existing evidence, to hear additional evidence, to entertain discovery, and to issue findings and conclusions based on the total evidence produced. Galvan argues that

throughout the course of the trial, the judge displayed overt hostility toward defense counsel, assumed an adversarial stance during questioning, required counsel to concede to damaging facts, and would not allow brief postponements to acquire additional witnesses, and that the trial court made findings which were contrary to the evidence.

 Due process demands an impartial adjudicator to make a ruling based on admissible evidence in a forum where the opportunity to cross-examine and present evidence is allowed. *Rose v. State,* 752 S.W.2d 529, 536 (Tex.Crim.App.1987). Galvan contends the trial court acted as an advocate, ignoring its duty to remain neutral, by serving as counsel and judge at the same time. The court is forbidden from serving as counsel and judge at the same time. *United States v. Saenz,* 134 F.3d 697, 702 (5th Cir. 1998); *Ex parte Miller,* 696 S.W.2d 908 (Tex. Crim.App.1985). Texas is 'second to none' in its disapproval of judges' examination of witnesses during a jury trial, which is common practice in federal courts because of FED. R. EVID. 614. *Morrison v. State,* 845 S.W.2d 882, 907 (Tex.Crim.App.1992). "A primary concern in allowing active participation by judges is the danger that the judge will somehow convey his opinion of the case to the jury and ultimately influence their decision." *Id.*

The cases cited by Galvan can be distinguished from the facts of the case at hand. The Texas Court of Criminal Appeals has noted that there is no danger that any apparent bias will influence the jury when questioning does not occur in the presence of the jury. *Id.; see also Marshall v. State,* 164 Tex.Crim. 167, 297 S.W.2d 135 (1956). Because the questioning that Galvan complains of occurred during a pretrial hearing on a motion to quash conducted outside the presence of a jury, the questions did not result in harm to Galvan.

Galvan further contends that he was denied due process because no single hearing was held to consider all of the evidence, and because different judges heard different parts of the trial and none of the judges was

---

**5.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

able to consider all of the evidence of selective prosecution. Galvan had an opportunity to develop all of his evidence in front of one judge during the motion to quash. This argument is without merit.

Point of error five is overruled.

■■■ In point of error six, Galvan contends that a new trial must be granted because an out-of-time appeal cannot be fully effectuated due to a portion of the record being lost or destroyed.

Galvan relies on Tex.R.App. P. 34.6(f), which states that if a meaningful review is not possible due to the loss or destruction of an exhibit, reversal may be required if the exhibit was properly designated. Tex.R.App. P. 34.6(f). Galvan argues that the destroyed exhibits directly relate to the primary issue at trial and on appeal, selective prosecution. He further adds that these exhibits may have helped to shed a greater light on the viability of this claim if they were available. Because they were destroyed and cannot be reconstructed, Galvan contends that he is denied the right to a full and complete review of his appeal.

Tex.R.App. P. 34.6(f) plainly and unambiguously states four circumstances which, when all are met, require a new trial, but Galvan fails to meet these requirements. These circumstances are:

> (1) if the appellant has timely requested a reporter's record; (2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or—if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible; (3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and (4) if the parties cannot agree on a complete reporter's record.

Tex.R.App. P. 34.6(f).

First, Galvan did not file a designation of record on appeal requesting inclusion of de-

fense Exhibits 1 and 2 (now destroyed) into the record on appeal. Second, the missing exhibits are not material to this appeal because the contents of the exhibits, through testimony, are in the record, and the original report would only be repetitive or cumulative of the information already contained in the record.[6] Hewitt testified in detail about the exact figures contained in the original report for the period between 1985 and April of 1992. The exhibits did not break down bond forfeitures by ethnicity, sex, or race. Galvan argues that if they were available, the lost exhibits may have helped to shed greater light on the viability of this claim. The exhibits did not and will not assist Galvan in his argument of selective prosecution other than showing frequencies of bond forfeitures. As stated in point of error two, Galvan failed to make a prima facie showing of selective prosecution. Galvan failed to show that he was singled out for prosecution, and he failed to show that the government's selection of him was invidious or in bad faith. The record reflects that defense Exhibits 1 and 2 do not contain any new information to support either prong of the requirements necessary to show selective prosecution. The loss of the exhibits was harmless, in no way impedes our review of the record, and in no way hindered Galvan's right to a meaningful appeal. For these reasons, Galvan's sixth point of error is overruled.

■■■ In his seventh point of error, Galvan argues that his counsel's failure to file a designation of the record or to request that the court reporter include the missing exhibits into the record on appeal was ineffective assistance of counsel.[7] He contends that the destruction of the documents denied him the right to a full and complete review of his appeal and that destruction was a direct result of his counsel's mistake.

■■■ As discussed in point six, the missing exhibits are merely cumulative of the testimony preserved by the reporter's rec-

---

6. The other two requirements, "without the appellant's fault" and "the parties cannot agree on a complete record," can be met by Galvan.

7. Galvan's counsel did not conform to Tex.R.App P. 34.6(f). *See Ward v. State,* 740 S.W.2d 794, 799 (Tex.Crim.App.1987).

ord. In order to prevail on an ineffective assistance theory, the appellant must show, first, that counsel's representation fell below an objective standard of reasonableness, and second, that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Davila v. State,* 718 S.W.2d 350, 352 (Tex.App.-Amarillo 1986, no pet.) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

This Court finds that even if Galvan's counsel was deficient, satisfying the first requirement in *Strickland,* he cannot show he was prejudiced by the deficient representation. The record shows that the exhibits which were destroyed were preserved in the record through testimony during the motion to quash. Galvan argues that the evidence may be material, but he cannot show, to a reasonable probability, that but for his counsel's error, the result would have been different.

Additionally, Galvan makes a claim that his appellate counsel was ineffective. The remedy for ineffective assistance of appellate counsel is an out-of-time appeal. *Ex parte Coy,* 909 S.W.2d 927, 928 (Tex. Crim.App.1995). This claim is moot because Galvan received an out-of-time appeal from the Court of Criminal Appeals and appellate review of his claim by this Court. Galvan's seventh point of error is overruled.

The judgment of the trial court is affirmed.