

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00411-CR

SANDEN COTTONGAME                                          APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY
TRIAL COURT NOS. 11604-4299, CR-2011-08399-Y

----------

## MEMORANDUM OPINION[1]

----------

Appellant Sanden Cottongame appeals from her conviction for violating a city ordinance regarding the number of animals that may be kept without a permit. We affirm.[2]

---

[1]*See* Tex. R. App. P. 47.4.

[2] This appeal was originally submitted without oral argument on March 29, 2013, before a panel consisting of Justice Gardner, Justice McCoy, and Justice Meier. *See* Tex. R. App. P. 39.8; 2nd Tex. App. (Fort Worth) Loc. R. 3B(2). The

## I. BACKGROUND

Appellant lived in Krum, Texas (the city), and she apparently was widely known to feed and take care of feral cats. The city had an ordinance limiting the number of cats or dogs that could be kept on a person's property: "A person may keep three (3) dogs and three (3) cats, plus a litter of each to age three (3) months, without a permit, and, with a permit, may keep a larger specified number of dogs or cats." Appellant did not have a permit to keep more than three cats. One of the city's animal-control officers, Roger Hooten, knew Appellant had more than three cats but did not enforce the ordinance against her because she was helping with the feral-cat problem in the city and because "she was . . . attempting to bring into compliance [her] animal rescue." Before Hooten left his job as an animal-control officer, he sent Appellant a letter stating that she would be issued a citation if she did not come into compliance with the ordinance after he discovered that "[t]he cats weren't being contained or controlled on the property" and "there was a problem with an outbreak of the calici virus in her cat population."

Appellant's neighbor, George Schneider, saw several cats on many occasions going in and out of Appellant's garage, where she left open cans of cat

court, on its own motion on June 10, 2014, ordered this appeal resubmitted without oral argument on July 1, 2014; assigned the appeal to a new panel, consisting of Justice McCoy, Justice Meier, and Justice Gabriel; and assigned the undersigned to author the opinion.

food for the feral cats. Schneider repeatedly saw Appellant leave garbage cans full of cat litter for weekly trash pickup, which was more litter than three cats could use. Schneider eventually discovered that Appellant had twenty-six cats and became "concerned about the possibility of disease" after many of the cats began "intruding in [Schneider's] yard and . . . diminishing the joy [he was] having living there." Schneider called the city and reported the problem in July 2011.

Officer Curtis Watkins, an animal-control officer for the city, investigated Schneider's complaint on July 16, 2011 by visiting the home of Appellant. He saw cats running from shelters in front of Appellant's house and noticed cats going in and out of the partially-open garage. Appellant's husband allowed Watkins to enter the home where Watkins saw more than twenty "free-running cats." All the cats were adults. Everything in the house was covered in cat litter, there was no carpet in the home, and cat urine was on the living-room floor. The smell of cat urine and feces sickened Watkins to the point that he had to leave the house to get fresh air. Watkins issued Appellant a citation for violating the ordinance.

The State filed a complaint alleging Appellant's violation of the ordinance. *See* Tex. Code Crim. Proc. Ann. art. 45.018 (West 2006). Appellant pleaded not guilty in the municipal court and waived her right to a jury trial. *See id.* art. 45.023 (West Supp. 2013), art. 45.025 (West 2006). The municipal court found her guilty of the offense of "ANIMAL-OVER NUMBER ALLOWED" and ordered her to pay a $200 fine. *See id.* art. 45.041 (West Supp. 2013). Appellant

appealed the municipal-court judgment to the county criminal court. *See id.* art. 45.042(a) (West 2006).

Before trial, Appellant filed a motion to quash the complaint arguing that the enforcement of the ordinance would violate the Privileges or Immunities Clause of the Fourteenth Amendment. U.S. Const. amend. XIV, § 1, cl. 2. The trial court denied the motion. A jury found Appellant guilty of the offense as alleged in the complaint and assessed her punishment at $75 plus court costs. Appellant filed a motion for new trial, arguing that her prosecution violated the Privileges or Immunities Clause of the Fourteenth Amendment and that her conviction was supported by insufficient evidence. The motion was overruled by operation of law. *See* Tex. R. App. P. 21.8(c). Appellant now appeals and raises the same issues presented in her motion for new trial.

## II. SELECTIVE ENFORCEMENT

In her first issue, Appellant asserts that her conviction violated the Privileges or Immunities Clause of the Fourteenth Amendment because the city "selectively enforced its purported ordinance that prohibits any person from having possession of more than three cats without a permit." Although Appellant consistently argues that her claim arises under the Privileges or Immunities Clause of the Fourteenth Amendment, the substance of her claim at trial and now on appeal is selective enforcement of the ordinance. We will address this claim as a claim of selective enforcement and note that Appellant clearly preserved this

4

issue for our review.[3]  *See Galvan v. State*, 988 S.W.2d 291, 295 (Tex. App.—Texarkana 1999, pet. ref'd).

After the State rested its case in chief, Appellant argued that the ordinance was "selectively enforced," entitling her to present testimony "about the unfair treatment and how they treated other folks better or differently than her."  In an offer of proof, Appellant's counsel orally stated that several city residents, identified by name, had more than three cats and were not cited for violating the ordinance.  *See* Tex. R. Evid. 103(b).  The trial court assumed Appellant's counsel's assertions about what the evidence would be were true and denied Appellant's request.

At the punishment phase of her trial, Appellant again attempted to introduce evidence showing that the city allowed other citizens to have more than three cats without a permit but did not cite those citizens for violating the ordinance.  In Appellant's offer of proof, a city councilwoman testified that she had five cats, did not have a permit, and had never been cited for a violation of the ordinance.  A city councilman testified that he had six barn cats and was unaware of the ordinance.  A former city mayor stated that the ordinance previously was not enforced against Appellant because there were no

---

[3]Even under the Privileges or Immunities Clause, Appellant would not be entitled to relief.  *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, ___, 130 S. Ct. 3020, 3030–31 (2010) (recognizing rights protected by Fourteenth Amendment against state infringement are analyzed under Due Process Clause and not Privileges or Immunities Clause).  Appellant has not argued a due-process violation.

5

complaints. The trial court denied Appellant's request and did not allow the admission of evidence "for selective prosecution or vindictiveness or anything of that sort" but did allow Appellant to call witnesses to "testif[y] they encouraged [Appellant] to proceed by suggesting that she take animals and . . . not issuing citations at previous times."

The former city mayor then testified that he believed Appellant's unofficial feral-cat program was beneficial to the city. Officer Terry Hargis, a police officer for the city, testified that he "referred people to take cats" to Appellant but stopped when he was made aware that her cats were sick. Appellant admitted that she was notified what was required to come into compliance with the ordinance but that she never applied for a permit.

A claim of selective enforcement is not a defense to the merits of the criminal charge but is "an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463, 116 S. Ct. 1480, 1486 (1996). We presume that prosecutions are proper. *Id.* at 464, 116 S. Ct. at 1486. To overcome this presumption and establish a prima facie case of selective enforcement, Appellant must show that (1) while others similarly situated generally have not been proceeded against because of conduct of the type forming the basis of the charge against her, she was singled out for enforcement and (2) the city's discriminatory selection of her for enforcement was in bad faith or invidious, which means that the enforcement was based on impermissible considerations

6

such as race, religion, or the desire to prevent her exercise of constitutional rights. *Gawlik v. State*, 608 S.W.2d 671, 673 (Tex. Crim. App. [Panel Op.] 1980); *Garcia v. State*, 172 S.W.3d 270, 273–74 (Tex. App.—El Paso 2005, no pet.); *accord Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001). Appellant must proffer "exceptionally clear evidence" of the second prong, i.e., the enforcement was initiated for an improper reason. *Galvan*, 988 S.W.2d at 296 (quoting *County v. State*, 812 S.W.2d 303, 308 (Tex. Crim. App. 1989) (op. on reh'g)).

The former mayor of the city testified that the ordinance had not been enforced before because no one had complained about a violation of the ordinance. The citation against Appellant was initiated after a complaint by Appellant's neighbor. Hargis stated that Appellant was not singled out for enforcement. There was no evidence before the trial court indicating that Appellant was singled out for enforcement or that her selection for enforcement was based on anything other than a valid citizen complaint. *See, e.g., Nelloms v. State*, 63 S.W.3d 887, 893 (Tex. App.—Fort Worth 2001, pet. ref'd), *cert. denied*, 537 U.S. 960 (2002). Thus, Appellant did not meet her burden to show selective enforcement, and the trial court did not err in denying her motion to quash the complaint, denying her motion for directed verdict, or allowing her motion for new trial to be denied by operation of law on this basis.

7

## III. EVIDENCE SUFFICIENCY

In her second issue, Appellant argues that the evidence was insufficient to support her conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

Appellant asserts that there was insufficient evidence to show that she kept more than three cats, plus a litter of each, without a permit. Appellant contends that because there were no kittens at her home, she cannot be found guilty of violating the ordinance as stated in the complaint. But the ordinance allows for a maximum of three adult cats plus three litters of kittens without a permit. Here, the evidence showed Appellant had more than twenty cats, none of which were kittens, and did not have a permit to have more than three adult cats. The number of adult cats in Appellant's home, as shown by the evidence, violated the plain language of the ordinance. Therefore, the evidence was sufficient to support the jury's finding that Appellant was in violation of the ordinance. We overrule issue two.

## IV. CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.
*See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 17, 2014