**Willie NELLOMS a/k/a Willie Nellons, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–00–252–CR.**

Court of Appeals of Texas, Fort Worth.

Nov. 29, 2001.

Rehearing Overruled Jan. 10, 2002.

Publication Ordered Jan. 10, 2002.

Law Office of William H. "Bill" Ray, P.C., and William H. "Bill" Ray, Fort Worth, for appellant.

Tim Curry, Criminal D.A., Charles M. Mallin, Criminal D.A. and Chief of the Appellate Section, and Edward L. Wilkinson and Richard G. Bland, Asst. D.A.s, Fort Worth, for appellee.

Panel A: CAYCE, C.J., LIVINGSTON and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

### INTRODUCTION

Appellant, Willie Nelloms a/k/a Willie Nellons (Nelloms), waived his right to a jury trial and following a trial before the court, received a felony conviction for sexual assault of a child under the age of seventeen.[1] On appeal, Nelloms raises two issues. First, Nelloms contends that the State withheld exculpatory and impeachment evidence from him resulting in his involuntary waiver of his right to a jury trial. Nelloms' second issue is that his equal protection rights were violated when the prosecution chose to charge him, but did not charge the child victim's mother for her alleged participation in one of the sexual episodes. We affirm Nelloms' conviction.

### FACTUAL AND PROCEDURAL HISTORY

On November 12, 1999, the sixteen-year-old victim, a special education student with mental and physical handicaps stemming from a stroke suffered at the age of ten, reported to her school counselor that Nelloms had forced her to have sexual relations with him the previous night. Nelloms was at the time living in the same house as the victim and the mother, Janice Washington (Washington). Child Protective Services was notified, and Nelloms and Washington were taken to the police station for questioning. The child victim provided statements to the police and Child Protective Services. In her statement to police she indicated that her mother was asleep during all of the sex acts with Nelloms. The victim was then taken to Cooks Children's Hospital where she was examined by a Sexual Assault Nurse Examiner.

The child victim told the nurse, and later testified, that the reported incident was not the first time Nelloms had sex with her; they had been having sex together since she was fourteen. The victim told the nurse that she had been assaulted before she was ten years old by one of her mother's prior boyfriends. The nurse testified that it was medically impossible to determine if Nelloms had sex with her or when she had sex. Rather, the only certain medical finding was that the child victim had sex sometime before her examination and had a venereal infection, Trichomonas.

At trial the child victim, and sole eye witness, was indefinite about how often she was sexually assaulted by Nelloms and made contradictory statements regarding whether they engaged in anal, oral, or other types of sexual behavior. Specifical-

---

1. TEX. PENAL CODE ANN. § 22.011 (Vernon Supp.2001).

ly, her written statements contradicted her claims at trial that they never had anal or oral sex. The victim's high school principal testified that, according to her experience with the victim, the victim did not always start out telling the truth but eventually the truth would come out. Nelloms' sister and nephew testified that the victim wrote and signed a statement a few days prior to trial stating that Nelloms did not assault her. Despite these facts, the trial court believed the victim to be credible and found Nelloms guilty, sentencing him to eighteen years in the Institutional Division of the Texas Department of Criminal Justice.

At trial, Nelloms' counsel called three witnesses. He called Nelloms' above-mentioned sister and nephew, and Washington, the victim's mother. When Nelloms called Washington, the State approached the bench. The State informed the judge that Washington was under investigation for child abuse involving the child victim and failure to report child abuse and asked that the court appoint counsel for Washington. Washington met with counsel and, on the stand, asserted her Fifth Amendment right against self-incrimination.

Nelloms' counsel objected and made an oral motion for a mistrial. Counsel based his motion on the grounds that he had no knowledge of the investigation and that the State had failed to provide information regarding the investigation despite providing an open file on the case. Nelloms' counsel filed two written motions for mistrial and an oral request for a continuance. In his motions, Nelloms contended that the State failed to provide notice of the investigation of the victim's mother and the State selectively prosecuted him but not the mother. The trial court conducted a hearing on Nelloms' motion for mistrial and denied both motions.

## IMPEACHMENT EVIDENCE

Nelloms' counsel testified during the mistrial hearing that the investigation regarding Washington centered around the child victim's claim that Washington had participated in having sex with the child victim and Nelloms. He testified that the State was aware of this investigation six days prior to trial, but failed to notify him. Counsel further noted that the State had two opportunities to reveal this information in its responses to defense motions. Nelloms claims that the State's failure to provide the information constitutes a *"Brady* violation" because the investigation stems from the victim's written statement that the mother participated in this act despite her later testimony and written statement that her mother was asleep during every sexual episode with Nelloms. In other words, Nelloms claims that the investigation yielded impeachment evidence that the State knew about but failed to disclose. Nelloms further asserts that he would not have waived a jury trial in this case if he had known about the alleged sexual relationship.

 When the prosecution suppresses evidence favorable to the accused, due process is violated where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963); *Wyatt v. State,* 23 S.W.3d 18, 27 (Tex.Crim.App.2000); *Page v. State,* 7 S.W.3d 202, 205–06 (Tex.App.-Fort Worth 1999, pet. ref'd). *Brady* material includes both impeachment and exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Thomas v. State,* 841 S.W.2d 399, 404 (Tex.Crim.App.1992); *Palmer v. State,* 902 S.W.2d 561, 565 (Tex. App.-Houston [1st Dist.] 1995, no pet.). Evidence suppressed by the prosecutor is

"material" if there is "a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different." *Wyatt,* 23 S.W.3d at 18 (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3379). Likewise, a "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.* To prevail, Nelloms must present evidence that (1) the prosecution suppressed or withheld evidence; (2) the suppressed evidence would have been favorable to the accused; and (3) the evidence was material to the accused's defense. *Thomas,* 841 S.W.2d at 404; *Page,* 7 S.W.3d at 206; *Cruz v. State,* 838 S.W.2d 682, 686 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd).

■ Our threshold concern in evaluating a *Brady* claim is whether the favorable evidence was suppressed or withheld by the State or its agents. *Juarez v. State,* 439 S.W.2d 346, 348 (Tex.Crim.App.1969); *Smith v. State,* 840 S.W.2d 689, 693 (Tex. App.-Fort Worth 1992, pet. ref'd). The State agreed that it intentionally withheld the evidence from defense counsel. In this case the evidence indicates that the State initially decided to withhold the investigation and its contents because they were not going to call Ms. Washington as a witness. As to whether the information favored Nelloms, the prosecuting attorney admitted during the mistrial hearing that she excluded the information from her open file and did not reveal it because, after serious contemplation with her partner, she felt it was not exculpatory and had no intention of bringing it up in trial. The prosecuting attorney also indicated that she did not think that the allegation summary impeached the child victim due to the high volume of sexual encounters

between Nelloms and the victim and also noted that they only received the information a few days before trial.

■ As to the element of materiality, the record reveals that defense counsel received a fax from the District Attorney's office two days after the prosecution received the report from the Department of Protective and Regulatory Services. The document specifically listed the sexual allegations alleged by the child victim against both Nelloms and Ms. Washington, her mother.[2] Therefore, it appears from the record that defense counsel did receive the information before trial, albeit probably not in a timely manner. More importantly, the record shows that, with the disclosed information, Nelloms' counsel was able to, and did, fully cross-examine the child witness regarding her conflicting testimony. Virtually without exception, courts have uniformly held that in circumstances like this one, where *Brady* material is disclosed during an ongoing trial the initial inquiry is whether the defendant was prejudiced by the tardy disclosure. *United States v. McKinney,* 758 F.2d 1036, 1050 (5th Cir.1985); *Little v. State,* 991 S.W.2d 864, 866 (Tex.Crim.App.1999); *Givens v. State,* 749 S.W.2d 954, 957 (Tex. App.-Fort Worth 1988, writ ref'd). To prove prejudice, Nelloms must provide a reasonable probability that, had the evidence been disclosed to the defense earlier, the outcome of the proceeding would have been different. *Wilson v. State,* 7 S.W.3d 136, 146 (Tex.Crim.App.1999). Here, Nelloms is claiming that he suffered prejudice because he would not have waived his right to a jury trial if he had known about the impeachment evidence in advance.

---

**2.** The summary of the report provides, in pertinent part, "The allegations were for sexual abuse of [the child victim] with the alleged perpetrators listed as her mother, Janice Washington and her mother's paramour, Willie Nelloms."

■ Nelloms has not presented evidence, beyond the mere assertion that he would have chosen a jury trial, that the result of the trial would have been different had the evidence been disclosed earlier. Initially, Nelloms provides no evidence that Washington would not, under any other circumstances, have pled the Fifth Amendment, as she did when she was called to the stand in this instance. Additionally, there is no evidence that a jury would have found the child victim any less credible than the trial judge did in this bench trial. Finally, an analysis of the victim's statement that her mother and Nelloms had sex with her at approximately the same time, while impeaching the victim's earlier claim that her mother was asleep during all episodes, still implicates Nelloms' guilt.

■ Aside from the lack of evidentiary support for a prejudice claim, there is also no evidence that this tardy revelation resulted in an ill-informed, and therefore involuntary, waiver of Nelloms' right to a jury trial. In Texas the right to a jury trial is inviolate. TEX.CODE CRIM. PROC. ANN. art. 1.12 (Vernon 1977). However, upon entering a plea, a defendant in a criminal trial may waive the right to a jury trial if the waiver is "made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the State." *Id.* art. 1.13(a) (Vernon Supp.2001). The general rule regarding waiver of a jury trial is that it must be an express, intelligent waiver on part of the defendant. *Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930); *Samudio v. State*, 648 S.W.2d 312, 314 (Tex.Crim. App.), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1368 (1983).

The prosecuting attorney testified during the mistrial hearing that both defense counsel and the trial judge admonished Nelloms about his right to a jury trial. The prosecuting attorney also pointed out that the court reminded Nelloms that only a jury could give him probation and, because of the relevant statute, if the trial judge was the finder of fact in the guilt-innocence phase, he could not sentence Nelloms to probation if guilt was found. The record supports that testimony. Despite these warnings by his counsel and the trial judge, when he was finally asked by the trial judge if he wanted a jury trial, Nelloms responded with an unequivocal "I do not want a jury trial." In short, the record unmistakably demonstrates that Nelloms knowingly and voluntarily waived his right to a jury trial despite the advice of both his counsel and the trial judge.

Because there is no evidence that Nelloms was prejudiced by the tardy disclosure, we hold that he failed to meet his initial burden under this modified *Brady* analysis and hereby overrule his first issue. *See, e.g., In re A.C.*, 48 S.W.3d 899, 906 (Tex.App.-Fort Worth 2001, pet. denied) (holding that despite the State's tardy disclosure of a child victim's statement in a terroristic threat case, there was "nothing in the record to demonstrate that appellant did not knowingly and voluntarily waive his right to a jury trial"); *Loveless v. State*, 21 S.W.3d 582, 585 (Tex.App.-Dallas 2000, pet. filed) (finding harmless error occurred in failure to procure written jury waiver when the record reflected that the trial court clearly admonished appellant on the lack of probationary power for the trial court in a case involving aggravated sexual assault of a child under seventeen).

## Selective Prosecution

In his second issue, Nelloms maintains that his Equal Protection rights were violated by the State's failure to prosecute Janice Washington. In support of his con-

tention, Nelloms simply reiterates that Washington did the same thing he did and was not prosecuted; therefore, the State committed the act of selective prosecution. This argument does not compel us to reverse the trial court's denial of Nelloms' motion for mistrial.

To succeed in a selective prosecution claim the defendant has the burden to establish a prima facie case of selective prosecution since there is a presumption that a prosecution for violation of a criminal law is commenced in good faith and in a nondiscriminatory fashion. *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996); *Gawlik v. State,* 608 S.W.2d 671, 673 (Tex.Crim.App.1980); *Carreras v. State,* 936 S.W.2d 727, 730–31 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd), *cert. denied,* 522 U.S. 933, 118 S.Ct. 338, 139 L.Ed.2d 262 (1997). In order to establish a prima facie case of selective prosecution, Nelloms must show (1) that, he has been singled out, while others similarly situated have not generally been proceeded against despite committing conduct of the type forming the basis of the charge against him, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith. *Gawlik,* 608 S.W.2d at 673; *Galvan v. State,* 988 S.W.2d 291, 296 (Tex.App.-Texarkana 1999, pet. ref'd). An appellant claiming selective prosecution must come forth with "exceptionally clear evidence" that the prosecution was initiated for an improper reason. *County v. State,* 812 S.W.2d 303, 308 (Tex.Crim.App.1989).

In this instance, Nelloms fails to meet the second element of the test for establishing a prima facie case of selective prosecution. Nelloms presents no proof that the State acted with invidious intent in his particular case. *See McCleskey v.*

*Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987) (noting that a defendant must establish that the prosecutor "in *his* case acted with discriminatory purpose"). Instead, Nelloms simply asserts that the prosecution had no justifiable reason not to prosecute Janice Washington. More importantly, Nelloms concedes he "does not contend that the case being prosecuted against him is brought in bad faith." Without more, there is an obvious lack of exceptionally clear evidence that the State acted in bad faith. Because Nelloms has failed to establish a prima facie case of selective prosecution, we hold that the trial court did not err in denying his motion for mistrial; therefore, we overrule his second issue.

## CONCLUSION

Having overruled both of Nelloms' issues, we affirm the trial court's judgment.