

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00035-CR

———————————————————

JACQUELYN GAIL WRIGHT, Appellant

V.

THE STATE OF TEXAS

———

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1573089R

———

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury found Appellant Jacquelyn Gail Wright—a former Tarrant County Justice of the Peace, Precinct 4—guilty of three counts of tampering with a governmental record with the intent to harm or defraud another. *See* Tex. Penal Code Ann. § 37.10(a)(5), (c)(1). The trial court assessed her punishment and sentenced Wright to two years' confinement in state jail, probated for four years, on each count. Wright appeals from her conviction and raises three issues: (1) the trial court erroneously charged the jury on the law regarding extraneous offenses by giving an oral jury charge improperly commenting on the extraneous-offense evidence admitted at trial; (2) the trial court erroneously charged the jury on the law regarding extraneous offenses by giving an oral jury charge misstating the law on extraneous-offense evidence; and (3) the trial court abused its discretion by quashing Wright's subpoenas seeking information material and relevant to her selective-prosecution defense. We will affirm.

## I. Background

This case arises from Wright's claiming a residential-homestead exemption on property that she did not occupy as her principal residence. Relevant to this case, Wright owned three residential properties in Tarrant County: (1) 6100 Ivy Hill Road in Fort Worth; (2) 6104 Ivy Hill Road in Fort Worth; and (3) 4227 Maryanne Place in Haltom City. The Ivy Hill properties are located in Precinct 4; the Maryanne Place property is not.

Wright purchased 4227 Maryanne Place in 2004. In 2005, she applied for a general residential-homestead exemption for 6100 Ivy Hill. In 2008, Wright signed a warranty deed with vendors lien conveying 4227 Maryanne Place to her husband, and in 2009, he applied for an over-65 residential-homestead exemption on that property. Wright asked that the exemption on 6100 Ivy Hill be removed in 2010 and applied for a general residential-homestead exemption for 6104 Ivy Hill.

Two years later, in 2012, Wright applied for an over-65 residential-homestead exemption for 6104 Ivy Hill. In that application, Wright stated that she occupied the property as her principal residence, that she had done so since July 2010, and that she was not claiming a homestead exemption on another property.[1] But this was inaccurate: Wright resided at 4227 Maryanne Place with her husband—perhaps since as early as 2004—and there was a homestead exemption on that property.

---

[1]Wright's 2012 application asked whether Wright was claiming a homestead exemption on another property, and if she was, the application required that she give that property's address and stated, "If the property is in the Tarrant Appraisal District, the exemption will be removed and applied to this property." By signing the application, Wright stated that the facts in the application were true and correct and acknowledged that she was required to notify the chief appraiser if and when her right to the exemption ended. Underneath the application's signature line, the application stated, "**If you make a false statement on this application, you could be found guilty of a Class A misdemeanor or a state jail felony under Texas Penal Code Section 37.10**."

In late 2018, a grand jury indicted Wright on three counts of tampering with a governmental record.[2] According to the indictment, Wright, on or about December 15, 2015, December 5, 2016, and January 3, 2018, did, with the intent to harm or defraud another, use a government record—the 2012 application for an over-65 residential-homestead exemption—with knowledge of its falsity, namely that she occupied 6104 Ivy Hill as her principal residence.

In December 2018, Wright moved to quash and to dismiss the indictment. The trial court heard the motion in January 2019, took it under advisement, and deferred making a ruling at that time. The following month, Wright supplemented her motion, raising a selective-prosecution defense based on her claim that her prosecution was politically motivated and that the State had not prosecuted others for improperly claiming homestead exemptions. The trial court denied Wright's motion in late September 2019.

In mid-December 2019, Wright subpoenaed (1) then-Tarrant County Criminal District Attorney Sharen Wilson; (2) then-Tarrant County Commissioner J.D. Johnson; (3) then-Constable Joe D. Johnson; (4) Judge Christopher Gregory, the new Tarrant County Justice of the Peace, Precinct 4; and (5) Nicole Benoit, an employee in Commissioner Johnson's Office. The State moved to quash the subpoenas, arguing,

---

[2]The grand jury also indicted Wright on one count of theft of services, but the State waived that count before trial.

among other things, that the testimony and documents sought were not material or relevant to Wright's defense at trial.

In early January 2020, the trial court heard the State's motions to quash. After the trial court orally granted the motions to quash, Wright re-urged her motion to quash or to dismiss the indictment based on her selective-prosecution defense. The trial court again denied Wright's motion.

In late January 2022, guilt–innocence was tried to a jury. The State's theory of the case was that Wright had fraudulently obtained property-tax benefits for the 2015, 2016, and 2017 tax years by using the 2012 homestead-exemption application in which she had claimed to occupy 6104 Ivy Hill as her primary residence. During those tax years, Wright had lived with her husband at 4227 Maryanne Place and had leased 6104 Ivy Hill to a tenant.

At trial, the jury heard testimony from Wright's tenant at 6104 Ivy Hill, as well as from two of Wright's neighbors on Maryanne Place. The tenant testified that he had leased 6104 Ivy Hill from Wright from December 2014 to July 2019 and had lived there during that time. Wright's neighbors testified that Wright had lived at 4227 Maryanne Place during the 2015, 2016, and 2017 tax years. One neighbor testified that Wright and her husband had lived at 4227 Maryanne Place since 2004. That neighbor also testified that Wright had said that she did not have to live in Precinct 4 but could "run [for office] over there" because she owned property there.

Precious Bowers, a support-services manager with the Tarrant Appraisal District (TAD), testified about the property-tax benefits of a homestead exemption. She explained that the exemption is allowed only on the owner's primary residence and that a married couple can claim only one exemption. Bowers also testified regarding the various homestead-exemption applications Wright had filed since 2005, the homestead-exemption application Wright's husband had filed in 2009, and the request for confidentiality on 4227 Maryanne Place based on Wright's status as a judge,[3] which Wright and her husband had filed in 2017.

Bowers stated that by signing the 2012 homestead-exemption application, Wright not only claimed that she qualified for the exemption but also agreed to notify TAD when she no longer qualified for it. Based on Wright's filings with TAD, it was Bowers's opinion that Wright understood homestead-exemption laws and knew how to update her exemption status. Bowers further stated that, in 2018, TAD had cancelled Wright's homestead exemption for 6104 Ivy Hill for the 2013 through 2018 tax years because (1) Wright's husband had claimed a homestead exemption on 4227 Maryanne Place for those tax years and (2) Wright did not occupy 6104 Ivy Hill as her primary residence because she had leased it to a tenant during that time.

---

[3]The Texas Tax Code allows certain categories of homeowners—including judges and their spouses—to request that their home addresses be kept confidential. *See* Tex. Tax Code Ann. § 25.025.

Jeff Hodge, the assessment manager for the Tarrant County Tax Assessor–Collector, also testified. Through Hodge, the State admitted the tax records for 6104 Ivy Hill and a summary of those records, which showed that Wright had avoided over $10,000 in property taxes from 2011 through 2017 by claiming a homestead exemption on 6104 Ivy Hill. According to Hodge, Wright had paid all the back property taxes that she owed.

The jury also heard testimony from Jennifer Hall, the Tarrant County Republican Party Chair from December 2011 through June 2016. Hall testified that a person must live in Precinct 4 to run for Justice of the Peace, Precinct 4. In 2013 and 2017, Wright filed applications with the Tarrant County Republican Party to run for Justice of the Peace, Precinct 4. In her 2013 application, Wright claimed 6104 Ivy Hill as her "permanent residence address" and stated that she had lived in the precinct continuously for 43 years. In her 2017 application, she claimed 6100 Ivy Hill as her "permanent residence address" and stated that she had lived in the precinct continuously for 50 years. By signing both applications, Wright swore that "the foregoing statements included in my application are in all things true and correct."

As part of her defense, Wright called Marcus Rink, a police officer with the Tarrant County Criminal District Attorney's Office who was assigned to investigate Wright. During its cross-examination of Rink, the State emphasized much of the extraneous-conduct evidence already admitted during its case-in-chief, and it offered other extraneous-conduct evidence not previously admitted, including the fact that the

7

water bill for 6100 Ivy Hill was in Wright's sister's name[4] the day before Wright had filed her 2017 application to run for Justice of the Peace but was put in Wright's name the day after she filed her application.

The jury found Wright guilty on all three counts. After the jury was dismissed, the trial court heard additional evidence in the punishment phase. The trial court then sentenced Wright to two years in state jail on each count, probated for four years, along with ten days in jail as a probation condition. Wright has appealed.

## II. The Trial Court's Statements Regarding Extraneous-Offense Evidence

In Wright's first and second issues, she complains that the trial court erroneously charged the jury on the law regarding extraneous offenses by giving an oral jury charge (1) that improperly commented on the extraneous-offense evidence admitted at trial and (2) that misstated the law on extraneous-offense evidence. We start by recounting the trial court's comments and their context and dissecting Wright's appellate complaints. We will next address whether Wright invited error and then whether she preserved her complaints for appellate review. Finally, we will address the merits of Wright's complaints as necessary.

---

[4]Wright's sister and nephew lived at 6100 Ivy Hill.

## A. The trial court's comments and their context

At the end of the last day of testimony, the trial court gave the parties a proposed jury charge and told them that the court was going to orally instruct the jury regarding extraneous-offense evidence:

> You talked about extraneous offenses and we've heard talk about judicial conduct and this and that. I'm not going -- I'm going to tell the jury that that really has nothing to do with this case. She's charged with state-jail felony and that the other stuff is extraneous and that's just simply stuff, you know. It's not what she's charged with, and it's not to be used to convict her for this case.
>
> . . . .
>
> I'm going to read this instruction that we have in here, that they can use it if they believe it beyond a reasonable doubt as proof of intent as to look at the case as a whole. But I'm going to tell them she's not charged with any uncharged conduct. She's charged with what she's charged with in this indictment and this jury instruction.

At the charge conference the following day, Wright did not object to the jury charge and stated, "[T]he only question I had, you mentioned yesterday about verbally admonishing on the extraneous." When the trial court answered, "I will," Wright responded, "Not in the charge." The trial court then clarified, "I'm going to lecture the jury a little bit before we ever get into the charge. I'm going to read the charge to them after I've lectured them and tell them what order we're going in." Wright responded, "Perfect. I just didn't know if you said you were going to put it in the actual charge." The trial court again clarified, "It's in the actual charge on extraneous offenses. It says they must be proven beyond a reasonable doubt for you to use it for

9

any intent at all. And I'm going to tell the jury that she's not charged with these."

Wright responded, "Perfect." The trial court added, "And that they can believe or disbelieve anything they want to because they are the jury." Wright confirmed, "Right. That's all I have, Your Honor."

Before reading the charge to the jury, the trial court told the jury,

You've heard all the facts in this case. You've heard everything to be heard about. What the Defendant's charged with is in this jury instruction. And I've written it up with my court reporter and both sides to where it's -- it's a long jury instruction. If you want copies of it, we'll send you copies. You can read and write on it, whatever you want to do.

I'm going to read this jury instruction to you. You have to be bound by it because this is the law, not what you want the law to be or like for it to be, but this is what you get.

. . . .

*You've heard some instances of, really, misdeeds or wrong dealings that really aren't charged in this conduct.* And there's a paragraph in here that deals with if you believe them beyond a reasonable doubt. *And [if] you believe those things beyond a reasonable doubt, you can use it to form a basis on your intent and on your decisions and how you view this case.* [Emphasis added.]

But read that part too, but that's what you call[ ] uncharged conduct.

After explaining to the jury how the case was going to proceed, the trial court read the written jury charge, which included the following instruction regarding extraneous-offense evidence:

You are instructed that if there is any testimony before you in this case regarding the Defendant having committed an offense other than the offense alleged against her in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other

10

offenses, if any were committed, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the Defendant, if any, in connection with the offense, if any, alleged against her in the indictment in this case, and for no other purpose.

## B. Wright's appellate complaints

On appeal, Wright makes no complaint about the trial court's written charge and concedes that it accurately instructed the jury on the law regarding extraneous-offense evidence under Texas Rule of Evidence 404(b).[5] Instead, Wright challenges the trial court's oral instructions to the jury, arguing in her first issue that the trial court's statement, "You've heard some instances of, really, misdeeds or wrong dealings that really aren't charged in this conduct," was an improper comment on the evidence in violation of Article 38.05 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.05. In her second issue, she argues that the trial court's statement, "And [if] you believe those things beyond a reasonable doubt, you can use it to form a basis on your intent and on your decisions and how you view this case," misstated the law on extraneous offenses.

---

[5]Rule 404(b) precludes the admission of evidence of a crime, wrong, or other act solely to prove a person's character to show that she acted in conformity with that character on a particular occasion but allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b).

## C. Invited error

The State contends that Wright invited error (if any) regarding the trial court's comments about extraneous-offense evidence because she "expressly invited such comments from the trial judge during the charging conference." The invited-error doctrine prevents a party from taking advantage of an error that it invited or caused, even if that error involves an absolute or waivable-only right. *See Deen v. State*, 509 S.W.3d 345, 348 n.6 (Tex. Crim. App. 2017); *Woodall v. State*, 336 S.W.3d 634, 644–46 (Tex. Crim. App. 2011); *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999). *See generally Proenza v. State*, 541 S.W.3d 786, 792, 794 (Tex. Crim. App. 2017) (explaining that what we used to call "fundamental errors" are now violations of category-one (absolute) and category-two (waivable-only) rights under the framework provided in *Marin v. State*, 851 S.W.2d 275, 279 (1993)). "In other words, a party is estopped from seeking appellate relief based on error that it induced." *Woodall*, 336 S.W.3d at 644. "To hold otherwise would be to permit him to take advantage of his own wrong." *Id.* (quoting *Prystash*, 3 S.W.3d at 531).

Although Wright reminded the trial court during the charge conference to orally admonish the jury about the extraneous-offense evidence, she did not invite error by doing so. Wright's complaint on appeal is not about the trial court's orally admonishing the jury but about the substance of that oral admonishment. Because the trial court did not advise the parties of the substance of that admonishment, Wright

had no way of knowing exactly what the trial court was going to tell the jury. We thus conclude that Wright did not invite the error of which she now complains.

**D. Error preservation**

Wright frames her first two issues as jury-charge error. Article 36.14 of the Code of Criminal Procedure requires the trial court to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case" that does "not express[ ] any opinion as to the weight of the evidence." Tex. Code Crim. Proc. Ann. art. 36.14. Wright admits that she did not object to the trial court's "oral jury charge on the law regarding extraneous offenses" and thus concedes that she did not preserve her charge-error complaints. She nevertheless argues that she was not required to do so and that the trial court's comments should result in reversal under *Almanza* because the trial court's error resulted in egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (establishing standard of review for jury-charge error and holding that unobjected-to jury instruction should be reviewed for egregious harm).

But, as the State points out, *Almanza* does not apply to a trial court's *oral* instructions or comments to the jury that do not appear in the jury charge. *See Fuentes v. State*, 991 S.W.2d 267, 276 (Tex. Crim. App. 1999); *see also Young v. State*, 382 S.W.3d 414, 422–23 (Tex. App.—Texarkana 2012, pet. ref'd) ("The Texas Court of Criminal Appeals has declined to extend *Almanza* beyond the context of the jury charge."). Thus, by failing to object to those comments, a defendant preserves nothing for

appellate review. *See Fuentes*, 991 S.W.2d at 276. Wright contends that the trial court's oral statement was part of the "charge on the law regarding extraneous offenses because it was given contemporaneous[ly] with the written charge being read to the jury" and that *Almanza* thus applies. We disagree.

Here, the trial court's comments regarding extraneous-offense evidence were made before the trial court read the charge to the jury. They were not a part of the charge. Wright cites no case law to support her contention that *Almanza* should apply here, and we decline to so hold. *See, e.g.*, *Young*, 382 S.W.3d at 423 (holding that trial court's instruction "given orally on the second day of a four-day trial, is a trial error, rather than a jury charge error" and that *Almanza* thus did not apply). Because these oral instructions were not part of the jury charge, *Almanza* does not apply. *See Fuentes*, 991 S.W.2d at 276. We thus turn to non-jury-charge error-preservation principles.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Most complaints, "whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v. State*, 138 S.W.3d 334, 342 (Tex.

14

Crim. App. 2004); *see Henderson v. United States*, 568 U.S. 266, 271, 133 S. Ct. 1121, 1126 (2013); *Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013). But Rule 33.1 "does not apply to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal." *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009); *see Peyronel v. State*, 465 S.W.3d 650, 652 (Tex. Crim. App. 2015); *Grado v. State*, 445 S.W.3d 736, 738–39 (Tex. Crim. App. 2014); *Reyes v. State*, 361 S.W.3d 222, 229 (Tex. App.—Fort Worth 2012, pet. ref'd). A waivable-only right cannot be forfeited—it "cannot be surrendered by mere inaction" but is waivable only "if the waiver is affirmatively, plainly, freely, and intelligently made." *Grado*, 445 S.W.3d at 739. "[A] trial judge has an independent duty to implement [a waivable-only right] absent any request unless there is an effective express waiver." *Id.*

One such waivable-only right is the right to a trial free of improper judicial comments under Article 38.05 of the Code of Criminal Procedure. *Proenza*, 541 S.W.3d at 797–801. Article 38.05 prohibits a trial judge from commenting on the weight of the evidence or otherwise divulging to the jury his opinion of the case:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. Ann. art. 38.05.

We first address whether Wright preserved her second issue for our review. In that issue, she complains that the trial court misstated the law regarding extraneous-offense evidence when it said, "And [if] you believe those things beyond a reasonable doubt, you can use it to *form a basis on your intent and on your decisions and how you view this case.*" [Emphasis added.] Wright's complaint concerns a statement of law by the trial court, rather than an improper judicial comment under Article 38.05. *See Arrellano v. State*, 555 S.W.3d 647, 653 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). She was required to object to preserve this complaint for our review, and because she did not, she has forfeited it. *See* Tex. R. App. P. 33.1(a)(1); *Arrellano*, 555 S.W.3d at 653; *see also Arroyo v. State*, No. 03-18-00703-CR, 2020 WL 5884191, at *4 (Tex. App.—Austin Sept. 30, 2020, no pet.) (mem. op., not designated for publication). We thus overrule Wright's second issue.

Wright's first issue addresses the trial court's statement, "You've heard some instances of, really, *misdeeds or wrong dealings* that really aren't charged in this conduct." [Emphasis added.] Wright contends that this was an improper comment on the evidence in violation of Article 38.05 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.05. The right to trial free of improper judicial comments under Article 38.05 is a waivable-only right, so Wright could forfeit that right only through an express waiver. *See Proenza*, 541 S.W.3d at 797–801. Because the record does not reflect that Wright plainly, freely, and intelligently waived her right to

16

the trial court's complying with Article 38.05, she did not forfeit this statutory complaint and may urge it for the first time on appeal. *See id.* at 801.

**E. Analysis**

Wright points to the last part of Article 38.05, which provides that a trial judge should not "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." Tex. Code Crim. Proc. Ann. art. 38.05; *see Brown v. State*, 122 S.W.3d 794, 798 & n.8. (Tex. Crim. App. 2003) (explaining that "a trial judge must . . . refrain from making any remark calculated to convey his opinion of the case" because jurors may give special and peculiar weight to the language and conduct of the trial judge). By creating "a duty on the trial court . . . to refrain *sua sponte* from a certain kind of action," *Proenza*, 541 S.W.3d at 798, Article 38.05 provides the defendant with "the right to be tried in a proceeding devoid of improper judicial commentary," *id.* at 801.

A "trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case." *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.). But not "every unscripted judicial comment in fact disrupts the proper functioning of the judicial system." *Proenza*, 541 S.W.3d at 800. If an appellant challenges a trial court's comment that is "errorless or insignificant in the context of a particular trial," then that challenge can be "denied on its merits or else declared harmless." *Id.*

Wright complains that the trial court's characterization of the extraneous-offense evidence as "misdeeds or wrong dealings" was an improper comment on the evidence because it was a remark calculated to convey to the jury the trial court's negative and inculpatory opinion of the extraneous-offense evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.05. She further contends that the trial court's remark implied approval of the State's argument, indicated disbelief in Wright's position, and diminished the credibility of Wright's approach to the case. *See Simon*, 203 S.W.3d at 590. We disagree.

Here, given the comment's context, it did not imply approval of the State's argument, indicate disbelief in Wright's position, or diminish the credibility of Wright's approach to the case. The trial court's comment prefaced its reading the written charge to the jury and emphasized the extraneous-offense instruction, which Wright agrees "accurately provided the law regarding extraneous offenses." While making this comment, the trial judge called the jury's attention to the extraneous-offense paragraph in the written charge and referred to the requirement of belief beyond a reasonable doubt. We thus hold that the trial court's comment was errorless. *See Proenza*, 541 S.W.3d at 800.

But even if the comment was error, that error was insignificant when considered in the context of the trial. *See id.* At the start of trial, the trial court told the parties that it would take up objections to extraneous-offense evidence as the evidence was offered. But Wright never made a Rule 404(b) objection to the

18

voluminous amount of extraneous-offense evidence that the State offered. Nor did she ask for a limiting instruction when that evidence was admitted. Further, the trial court's comment immediately preceded its reading to the jury the written charge, which correctly instructed the jury regarding extraneous-offense evidence. Finally, in her closing argument, Wright referred to the trial judge's statements about extraneous offenses to emphasize that the case was about the charged offense, not the "fire and brimstone about this other stuff." We hold that error, if any, was harmless when considered in the context of this particular trial.

Accordingly, we overrule Wright's first issue.

### III. The Trial Court's Quashing Wright's Subpoenas

Wright's third issue complains that the trial court denied Wright her constitutional and statutory right to compulsory process by erroneously quashing her subpoenas for Wilson, the Johnsons, Gregory, and Benoit because the information sought from those witnesses was material and relevant to her selective-prosecution defense. Wright contends that the trial court should have denied the State's motions to quash and ordered the witnesses to testify at a hearing on the selective-prosecution issue. She argues that because she was denied access to these witnesses, she could not fully pursue her selective-prosecution defense and was thus denied due process of law.

### A. Applicable law (selective prosecution)

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge

for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463, 116 S. Ct. 1480, 1486 (1996). Because the issue of selective prosecution has no bearing on the determination of actual guilt, it is an issue for the trial court—not the jury—to decide. *Galvan v. State*, 988 S.W.2d 291, 295 (Tex. App.—Texarkana 1999, pet. ref'd).

To succeed on a selective-prosecution claim, the defendant has the burden to establish a prima facie case because the law presumes that a prosecution for violating a criminal law is commenced in good faith and in a nondiscriminatory fashion. *Gawlik v. State*, 608 S.W.2d 671, 673 (Tex. Crim. App. 1980); *Nelloms v. State*, 63 S.W.3d 887, 893 (Tex. App.—Fort Worth 2001, pet. ref'd); *see Armstrong*, 517 U.S. at 464, 116 S. Ct. at 1486. A defendant must come forward with "exceptionally clear evidence" that the prosecution was initiated for an improper reason. *Nelloms*, 63 S.W.3d at 893 (quoting *County v. State*, 812 S.W.2d 303, 308 (Tex. Crim. App. 1989)). To make a prima facie case for selective prosecution, a defendant much show (1) that she has been singled out for prosecution, while others similarly situated have not generally been proceeded against despite committing conduct of the type forming the basis of the charge against her, and (2) that the government's discriminatory selection of her for prosecution has been invidious or in bad faith. *See Gawlik*, 608 S.W.2d at 673; *Ex parte Quintana*, 346 S.W.3d 681, 685 (Tex. App.—El Paso 2009, pet. ref'd).

**B. Applicable law and standard of review (compulsory process)**

Criminal defendants have a right to compulsory process for obtaining witnesses. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. "But the right to compulsory process is not absolute." *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd). A defendant has the right to secure the attendance of witnesses whose testimony would be both material and favorable to her defense. *See Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998) (op. on reh'g). But "[c]ounsel's mere belief that a witness would support the defense's case is insufficient to establish materiality." *Emenhiser*, 196 S.W.3d at 921. To exercise the right to compulsory process, a defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense. *Coleman*, 966 S.W.2d at 528. "A defendant who has not had an opportunity to interview a witness may make the necessary showing by establishing the matters to which the witness might testify and the relevance and importance of those matters to the success of the defense." *Id.* (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 869–71, 102 S. Ct. 3440, 3448 (1982)).

Questions regarding limitations on the right to compulsory process are within the trial court's discretion. *Emenhiser*, 196 S.W.3d at 921; *see Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987). We thus review for an abuse of discretion a complaint that the trial court improperly quashed a subpoena. *Emenhiser*, 196 S.W.3d at 921 (citing *Drew*, 743 S.W.2d at 225 n.11). A trial court abuses its discretion if its

decision falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016); *Merrick v. State*, 567 S.W.3d 359, 375 (Tex. App.—Fort Worth 2018, pet. ref'd). We cannot reverse a trial court's decision unless we find that "the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley*, 493 S.W.3d at 83 (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim App. 2008)).

## C. Error preservation

The State contends that Wright failed to preserve this complaint for our review because the quashed subpoenas were not for a selective-prosecution hearing. At the hearing on the State's motion to quash, the trial court stated, "For purposes of in front of the jury, I'm going to grant [the motions to quash]" the subpoenas for Wilson, the Johnsons, Gregory, and Benoit. The State argues that because its motions "were for the purpose of a jury trial" and because Wright never asked for a ruling on whether the trial court quashed the subpoenas for a selective-prosecution hearing, she failed to preserve error.

In contrast to the trial court's oral ruling, the trial court's written orders quashing the subpoenas were not limited to "[f]or purposes of in front of the jury." The written orders broadly state that the subpoenas are quashed. We thus conclude that Wright has preserved this issue for our review. *See* Tex. R. App. P. 33.1(a)(2).

## D. Analysis

Wright claims that the State's decision to prosecute her was politically motivated. According to the "State's Disclosure No. 2," Wilson waited until April 2018 to ask the White Collar/Public Integrity Unit to investigate whether Wright was living in Precinct 4, even though Wright's 2014 opponent had informed Wilson in 2014 that Wright did not live in Precinct 4.[6] During the hearing on the State's motions to quash and the reconsideration of Wright's motion to dismiss the indictment, Wright argued that the investigation's timing was suspicious because Wilson sat on this information until April 2018, when Wright was in a contentious runoff election with Gregory. Gregory, according to Wright, was friends with, and was supported by, the Johnsons. Wright claimed that in 2017, she angered the Johnsons when Commissioner Johnson had asked her to "fix a ticket for someone" and she refused. Wright further claimed that Wilson's decision to investigate her in April 2018 was questionable because, in addition to the runoff, Wright's computer was hacked around that time, causing an email from then-Texas Legislator Konni Burton, in which Burton had allegedly said that Burton and her husband were claiming multiple homestead exemptions, to disappear.[7] Finally, Wright alleged that Benoit, as part of

---

[6]Wilson was elected DA in November 2014.

[7]Wright surmises that Burton had mistakenly sent this email to her and meant to send it to Ron Wright, who was the Tarrant County Tax Assessor–Collector from 2011 through 2017.

her employment in Commissioner Johnson's office, had helped several Tarrant County citizens with similar property-tax issues.

Wright argues on appeal that the purpose of subpoenaing Wilson was to determine why she ordered her office to investigate Wright, especially because the State—contrary to its later disclosure—had originally informed Wright that it had received a call from an anonymous informant in April or May 2018 that Wright did not live in Precinct 4. Wright additionally argues that the purpose of subpoenaing the Johnsons and Gregory was to determine whether Gregory and the Johnsons, either individually or collectively, "exerted any improper influence, political or otherwise, on Wilson or her office." Wright claims that Benoit's testimony would have shown that others were not prosecuted for conduct similar to Wright's.

Wright argued these theories to the trial court at the hearing, but she made no showing by sworn evidence or agreed facts that the witnesses' testimonies would be material or favorable to her selective-prosecution defense. *See Coleman*, 966 S.W.2d at 528. Moreover, as one of our sister courts has stated when considering whether a trial court erred by quashing a defendant's subpoena duces tecum directed at the district attorney's office seeking information related to the defendant's selective-prosecution defense,

> the justifications for a rigorous standard of proof by the defendant in an alleged selective prosecution case require a correspondingly rigorous standard for discovery in aid of it. Accordingly, in order to be entitled to discovery relief in pursuing a selective prosecution claim, the accused must present to the trial court some evidence tending to show the

24

existence of both elements of a selective prosecution claim; that is, both discriminatory effect and discriminatory intent.

*Garcia v. State*, 172 S.W.3d 270, 274 (Tex. App.—El Paso 2005, no pet.) (citing *Armstrong*, 517 U.S. at 468, 116 S. Ct. at 1488; *Carreras v. State*, 936 S.W.2d 727, 729 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd)). Here, Wright presented no such evidence. We thus conclude that the trial court did not abuse its discretion by quashing Wright's subpoenas for Wilson, the Johnsons, Gregory, and Benoit. We overrule Wright's third issue.

## IV. Conclusion

Having overruled Wright's three issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 30, 2023