

In The
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00166-CR
_____


GREGORY LAMAR YOUNG, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 5th Judicial District Court
Cass County, Texas
Trial Court No. 2010-F-00158



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

O P I N I O N

Gregory Lamar Young was found guilty of two counts of sexual assault of a child, engaging in organized criminal activity, and aggravated sexual assault. He was sentenced to life in prison on each count, with counts one and three to be served concurrently and the remaining counts to be served consecutively.[1]

The primary issue is whether the trial court's improper instruction to the jury, to find that the complainant was a "virgin" prior to the date of the offense, given orally during the trial without objection, can be reviewed by an appellate court for harmfulness.

## I.       Factual Background

On or about January 28, 2010, in Atlanta, Texas, Wilton Haynes drove Young and Cedric Clay to an apartment complex where he picked up three teenaged girls, Amy, Sherry, and Marie.[2] Sherry and Marie alleged that they were subsequently driven to several different houses, where they were sexually assaulted and forced to ingest cocaine. A few days later, Marie made an outcry to her parents, and after an investigation, these charges were filed.

The three girls[3] were at a friend's home at the Holly Hills Apartments in Atlanta, Texas. They left the apartments and were picked up by Haynes (a/k/a Butch). Clay (a/k/a C.B.) and

---

[1]Due to two prior felony convictions, the two counts of sexual assault were enhanced to first degree felonies and the punishment range of the remaining offenses were enhanced to include maximum sentences of life in prison.

[2]As the three girls are minors, we have used pseudonyms for their protection.

[3]At the time, Amy and Marie were fourteen years old and Sherry was fifteen years old; the girls considered each other to be best friends.

Young (a/k/a Solo) were also in Haynes' car. Neither Marie nor Sherry knew the men, but Marie was comfortable getting into the car because she trusted Amy, who knew Clay and Young.

Haynes drove them all to the home of Carl James (a/k/a Peanut). James was an admitted drug user, who preferred crack cocaine. James testified that he and his girlfriend had been drinking beer and consuming crack cocaine that night before Young and Clay arrived at the house with the three girls. He said that Young went into the bedroom with two girls, but he did not see any sexual activity or guns. Young and Clay provided him with drugs in exchange for the use of the bedroom. James testified that on that day, he had been smoking crack for several hours and had consumed twelve beers.

At James' house, Sherry, Marie, Amy, Young, and Clay went into the back bedroom. Both Sherry and Marie claim that Clay forced them to inhale several lines of cocaine. Marie said that Clay told her he would beat Amy if she refused. The girls admitted that the cocaine intoxicated them and made them dizzy and light-headed.

Everyone left the bedroom except for Sherry and Young. Sherry testified that Young sexually assaulted her. She remembers Young threatening her and her family should she ever tell anyone about what happened. Sherry testified that she saw a gun in a corner with a blanket over it, and Young looked at it. Marie remembered Sherry being in the room with Young for over an hour.

Marie testified that Young supplied the cocaine and they consumed it in the back bedroom. Marie also testified that after Sherry left the bedroom, Clay sexually assaulted her and threatened to come after her and her family if she ever said anything. Earlier, Marie saw Young

3

put a gun on the dresser. At one point, Clay put a gun to her head and told her to do what he said. When Clay left the room, Young entered the room and sexually assaulted Marie. A short time later, Clay came back into the room and told her that she had ten minutes to get dressed or they were leaving her there.

Clay had taken Sherry and Amy outside, where another car was waiting. There is disputed testimony regarding whether Amy, Sherry, or both girls went back into the house to get Marie. Amy testified that when she went back in to get Marie, she saw Marie and Young in the bedroom. Amy saw that Marie had her shirt off, but her pants and bra on, and Young had his underwear on.

Outside the house, the other two girls and Clay were waiting in Corvell Anderson's car when Marie joined them. Anderson drove them to the home of Tony Hill (a/k/a Thriller). Sherry and Amy went to the living room, while Marie and Clay went to the bedroom. At Hill's house, Marie testified that Clay sexually assaulted her, that Clay forced her to perform oral sex on Hill, and that Anderson also sexually assaulted her. Sherry testified that Clay forced her to perform oral sex on him and Anderson.

While they were all at Hill's house, Amy remembered Clay telling her that "[Marie] want to trick, so she don't want you to think nothing different of her, and then I told him, do what you got to do." Amy knew this meant selling sex for money. Amy and Sherry stayed at Hill's house while Marie, Clay, and Anderson got back into Anderson's car and drove Marie to several other houses, where, Marie testified, several different men paid Clay and sexually assaulted her. In

4

between these trips, Marie was taken back to Hill's house a couple of times, where she was sexually assaulted by Clay, Hill, and Anderson, as well as made to use more cocaine.

Young was at one of the houses where Anderson and Clay had driven Marie. Marie testified that Young took her into a bedroom and sexually assaulted her. While at that house, two unidentified men also sexually assaulted her.

Sherry confirmed that she was at Hill's house for a couple of hours. She remembers Clay and Anderson leaving with Marie a couple of times.

After Marie was brought back to Hill's house for the second (and last) time, Anderson saw that the other two girls were asleep on the couch. Anderson said Clay talked to Marie for a few minutes, then he (Anderson) went into the back room with Marie and sexually assaulted her. After assaulting Marie, Anderson woke up Sherry and Amy and drove all three girls to a place on Main Street, called Dixie Maid, where the girls told him to stop, and they walked back to Marie's home.

Anderson testified that he initially picked the girls up with the purpose of having sex and snorting cocaine. He confirmed that he snorted cocaine a few times that night and that he had oral sex and vaginal sex with Marie at Hill's house. He said Marie voluntarily disrobed for him and asked him what he wanted to do. Anderson also confirmed that he drove Clay and Marie to three houses that night (including Hill's) and he supposed, though he was not explicitly told, that Clay paid him "with cocaine and the girls," as Clay would normally have given him a few dollars for the transportation. He did not remember Clay and Hill going into a room with Marie.

5

A few days later, Marie told her parents about these events. An investigation ensued, statements were taken from the girls and other witnesses, and Sherry and Marie were examined by Kathy Lach, a sexual assault nurse examiner (SANE). The examination revealed no signs of trauma on either girl. Lach testified that Marie had two well-healed notches in her hymen.

At trial, Amy called Young her cousin and testified that she had known Young her whole life. Amy was also "close friends" with Clay and, at the time of the events, considered herself to be dating the twenty-eight-year-old man. In her initial statements to the police, Amy left out the fact that Clay was present during these events. At trial, she testified that she never saw either Sherry or Marie upset or crying and that on their walk home, the girls were in a good mood, though a "little bit" intoxicated.

## II. Legal Sufficiency

In his first two points of error, Young argues that there is legally insufficient evidence to support the jury's verdicts and that the evidence is legally insufficient to establish his identity. Young's arguments for these points of error, in their entirety, are:

> Appellant submits that the alleged victims, [Sherry and Marie], were intoxicated on the occasion in question such that their recollections and testing were irreparably tainted, and that a rational juror could not have found that Appellant committed the sex offenses.
>
> . . . .
>
> Appellant submits that the testimony and observations of [Marie] and [Sherry] that Appellant committed sex offenses were based on intoxicated, impaired observations and recollections which were insufficient to establish the identity of Appellant.

6

Here, Sherry and Marie both testified that they consumed several lines of cocaine throughout the night in question. Though the girls said the cocaine caused them to have slurred speech, light-headedness, and numb extremities, they also testified that they were aware of what was happening to them and that they remembered the people around them, the places they went, and when the events happened. Both also testified that Young sexually assaulted them, and they identified Young, in the courtroom, as the man who assaulted them. Marie also testified that Young and Clay took her and Sherry to James' house, where Clay sexually assaulted her.

Young contends that the evidence of identity and guilt is legally insufficient only because Sherry and Marie were intoxicated at the time the alleged events occurred, and therefore, their testimony was "irreparably tainted." Young's sole challenge is based upon the two witnesses' alleged lack of credibility, rather than a true challenge to the sufficiency of the evidence. The evidence, previously recited, is ample to support the jury's findings.

The credibility of witnesses is the sole province of the jury, and we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. State*, 443 U.S. 307, 318–19 (1979)); *see Ehrhardt v. State*, 334 S.W.3d 849, 857 (Tex. App.—Texarkana 2011, pet. ref'd). Here, the jury was entitled to believe the testimony of Sherry and Marie that Young sexually assaulted them. The jury could have reasonably inferred that Young acted in concert with Clay and James by taking Marie to James' house, where Clay sexually assaulted her in one of James'

rooms. The jury was free to reject all testimony and inferences to the contrary. Accordingly, we overrule Young's first two points of error.

### III.    Limitation of Cross-Examination of the Sexual Assault Nurse Examiner

In his third point of error, Young contends that the trial court erred in limiting his cross-examination of Lach, the sexual assault nurse examiner who examined both Sherry and Marie.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996); *Brown v. State*, 189 S.W.3d 382, 385 (Tex. App.—Texarkana 2006, pet. ref'd). A trial court abuses its discretion only when its decision is clearly wrong and lies outside the zone of reasonable disagreement. *Cantu v. State*, 842 S.W.2d 667 (Tex. Crim. App. 1992).

On direct examination, Lach testified that she did not find any signs of trauma on either Marie or Sherry, but that Marie's hymen had two well-healed notches on it.[4] Lach further stated that such finding was consistent with the history Marie had given to her. During Young's cross-examination of Lach, the following exchange took place:

> Q      Ms. Lach, is it true that what you're telling the jury is that your physical examination of these children, [Sherry] and [Marie], revealed no sexual trauma?
>
> A      The examination of [Marie], there was trauma to her hymen, and that could be consistent with sexual trauma.
>
> Q      Could it also be consistent with consensual sexual activity?
>
> A      It could be.

---

[4]The offense occurred on January 29, 2010, and the nurse examined Marie on February 9, 2010.

Q      And that would be the notches that you spoke of earlier?

A      That could be.

Q      Is there any way to date the notches as to when it happened?

A      No, there's not.

Q      So those notches could have occurred from sexual activity, consensual sexual activity, years ago.

[THE STATE]:  Your Honor, I object.

THE COURT:   I'll sustain the objection.   Counsel, approach, please.

The State did not make a specific objection, and the trial court did not specifically state the grounds upon which it sustained the State's objection.  But through a discussion at the bench and at a later hearing outside the presence of the jury, it is apparent that the trial court sustained the objection because it found that Young's question related to the victim's prior sexual activity and was therefore inadmissible under Rule 412 of the Texas Rules of Evidence.  When the court reconvened, the trial court instructed the jury "to disregard the last question that was asked by defense counsel of the witness, and you are to give it absolutely no weight or consideration in any of your deliberations in this case."

Texas Rule of Evidence 702 provides for the admission of the opinions of qualified experts if their expertise will help the fact-finder understand the evidence or determine a fact in issue.  The facts or data used by the expert in reaching his or her conclusions need not be admissible in evidence if they are the type reasonably relied upon by other experts in the particular field.  TEX. R. EVID. 703.  The expert may disclose the underlying facts or data on

9

direct examination or be required to disclose them on cross-examination. TEX. R. EVID. 705(a).

An opposing party is entitled to question an expert about information of which the expert was

aware, but upon which he or she did not rely. *Wheeler v. State*, 67 S.W.3d 879, 883 (Tex. Crim.

App. 2002).

At trial, Young argued that he "was merely attempting to question Ms. Lach about she

couldn't relate what she saw as far as the notches go and equate that with sexual trauma. Or

sexual assault." At the conclusion of the in camera hearing, Young stated,

> [M]y intent was to close the [cross] examination "by saying the only evidence that
> she secured about sexual assault was the patient history. In other words, the oral
> patient history, not the physical examination. . . . that the only evidence she had of
> sexual assault was the oral patient history."

On appeal, Young contends that the trial court erred in limiting his cross-examination because he

was "entitled to question an expert witness about information of which she is aware but upon

which she did not rely, here, Kathy Lach's opinion as to the causation and timing of the notches"

in Marie's hymen.[5]

Whether this question violated Rule 412 is subject to the particular facts presented,[6] but

that analysis is unnecessary. Even if the trial court erred by limiting the cross-examination of the

expert, that error was harmless because the same or similar testimony was admitted without

---

[5]The State contends that Young failed to preserve this issue for our review. Young asked the question, the State objected, and the trial court ruled on the objection. In asking the question, Young presented the issue to the trial court, and therefore preserved the issue for appellate review.

[6]*Compare Reynolds v. State*, 890 S.W.2d 156 (Tex. App.—Texarkana 1994, no pet.) (error to exclude defensive evidence offering alternative explanation for State's medical evidence), *with Kennedy v. State*, 184 S.W.3d 309 (Tex. App.—Texarkana 2005, pet. ref'd) (evidence of prior sexual activity not admissible to explain State's medical evidence due to timing of examination).

objection at another point in the trial. *See McNac v. State*, 215 S.W.3d 420, 425 (Tex. Crim. App. 2007) (citing *Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998) ("improper admission of evidence is not reversible error if the same facts are shown by other evidence which is not challenged")). Young sought to produce testimony that the notches could have been caused by consensual sex at a time prior to the events in question. Before the State's objection, Lach testified that she accepted the victims' oral history as true, that the notches could be consistent with consensual sexual activity, and that there is no way of knowing when the notches happened. Because the same or similar testimony was admitted without objection, any error is harmless. Therefore, we overrule this point of error.

## IV. Jury Instruction

### A. Comment on the Evidence

In response to the exchange and instruction to disregard detailed above, the trial court halted Young's cross-examination of Lach and held an in camera hearing under Rule 412 of the Texas Rules of Evidence. The trial court determined that there was no admissible evidence regarding the victims' prior sexual behavior. Prior to resuming Young's cross-examination of Lach, the trial court instructed the jury as follows: "Members of the jury, you are instructed that you must find that [Marie] was a virgin prior to January 28, 2010." In his fourth and final point of error, Young contends that this instruction was trial error because: (1) it is a comment on the evidence; (2) there is "absolutely no evidence to support the instruction"; (3) the court failed to

11

advise the parties of the instruction for prior review; and (4) Young was not given a chance to object to it.[7]

### 1.    Preservation

Young argues that the trial court's instruction was a comment on the evidence. Generally, a claim that the trial court erred by commenting on the weight of the evidence during trial or while ruling on evidentiary matters must be preserved by objection before the appellate court may consider it. *Woods v. State*, 569 S.W.2d 901 (Tex. Crim. App. 1978); *Morgan v. State*, 365 S.W.3d 706, 710 (Tex. App.—Texarkana 2012, no pet.). Here, Young failed to object to the instruction, and therefore he failed to preserve the issue for our review.

### 2.    Opportunity to Inspect and Object

Young also contends that the trial court failed to advise the parties of the instruction for prior review and that he was not given a chance to object to the instruction. Under Article 36.16 of the Texas Code of Criminal Procedure, "[t]he failure of the court to give the defendant or his counsel a reasonable time to examine the charge and specify the ground of objection shall be subject to review either in the trial court or in the appellate court." TEX. CODE CRIM. PROC. ANN. art. 36.16 (West 2006).

The record shows that Young had ample notice of the court's instruction and had several opportunities to object. During the Rule 412 hearing, the trial court informed the parties that it

---

[7]Young also argues that the instruction was tantamount to an instruction to find Young guilty. Despite the trial court's instruction, the jury, as the ultimate trier of fact and determiner of credibility, could have chosen to disbelieve the testimony of Marie and Sherry that Young sexually assaulted them. The evidence left open the possibility that the notches were caused by one of the other men who sexually assaulted the girls that night, including Anderson, who admitted to having sex with Marie. We find that the instruction falls short of an instruction to render a guilty verdict.

was inclined to instruct the jury to find that "both of these girls were virgins before this happened." After the Rule 412 hearing, with the defendant present, but the jury absent, the trial court informed the parties that it would instruct the jury to find that "[Marie] was a virgin prior to [January] 28, 2010." The jury was brought in and the court gave that very instruction. Young failed to object to the instruction at any time, despite opportunities to do so. We find that Young was given adequate prior notice of the instruction and several chances to raise an objection thereto.

### B. Jury Charge Error

Young also contends that the trial court's instruction is a jury charge error, and therefore does not have to be preserved by objection.[8] Even without an objection, if the instruction is considered as a part of the jury charge, it is reviewable under *Almanza*, and if erroneous, the case will be reversed upon a finding that the error led to egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

The Texas Court of Criminal Appeals has declined to extend *Almanza* beyond the context of the jury charge. *Fuentes v. State*, 991 S.W.2d 267, 276 (Tex. Crim. App. 1999). So the question is—what court instructions are a part of the jury charge? Supplementary oral instructions given to the jury with the written jury charge or after deliberations have begun are considered a part of the jury charge. *Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993); *Brooks v. State*, 967 S.W.2d 946, 950 (Tex. App.—Austin 1998, no pet.). We have

---

[8]Young references Article 36.14 of the Texas Code of Criminal Procedure entitled the "Charge of the Court" and alleged that the trial court instruction caused egregious harm.

previously found that written instructions which are filed at the same time as the original charge and delivered to the jury may be subject to the *Almanza* analysis. *Morgan*, 365 S.W.3d at 711.

Here, the instruction was oral and given to the jury during the second day of a four-day trial; there is no record that the instruction was ever placed in writing or physically delivered to the jury. The trial court directly instructed the jury to "find" that a fact was established when there had been no evidence offered to establish the fact. Our law provides that a trial judge must refrain from making any remark calculated to convey to the jury his or her opinion of the case. *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003).

Further, the Texas Code of Criminal Procedure prohibits a trial court from making a statement which comments on the weight of the evidence both in the jury charge, *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007), and outside the context of the jury charge, *see* TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979), such as when ruling on the admissibility of evidence. A trial court improperly comments on the weight of the evidence if it makes "a statement that implies approval of the State's argument, that indicates any disbelief in the defense's position, or that diminishes the credibility of the defense's approach to its case." *Hoang v. State*, 997 S.W.2d 678, 681 (Tex. App.—Texarkana 1999, no pet.) (footnotes omitted) (citations omitted). This instruction did not merely comment on the weight of the evidence; rather, it conclusively established a fact for which there was no evidence.

Finally, the judge is to instruct the jury in matters of law; the jury is to decide the facts. *Daniell*, 848 S.W.3d at 147 ("Article 36.14 does not authorize the judge to give instructions with

regard to factual matters, but only as to the applicable law."). This instruction patently violates that mandate. For all these reasons, the trial court committed error in giving this instruction.

The trial court reasoned that its instruction was necessary because a violation of Rule 412 could not be cured by an instruction to disregard. Such reasoning overlooks the well established principle that a jury is presumed to follow the trial court's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

Even so, our jurisprudence requires that an objection must be lodged to trial errors.[9] The Texas Court of Criminal Appeals has stated that the *Almanza* exception applies only to the jury charge. *Fuentes*, 991 S.W.2d at 276. This instruction, given orally on the second day of a four-day trial, is a trial error, rather than a jury charge error. Regardless of the impropriety of the instruction, in this context, Young was required to object to preserve this issue for appellate review. Many times during a trial, the trial court is required to directly instruct a jury on various matters. If the trial court errs in commenting on the evidence, an objection must be presented to preserve review; otherwise, each statement of a trial judge directly or indirectly to the jury would be subject to appellate review for egregious harm without the trial court having an opportunity to correct the error. Here, Young had an opportunity to object to the statement and failed to do so. Consequently, we cannot conduct a review of the harmfulness of the error.

---

[9]There is no point of error alleging that this judicial comment tainted the defendant's presumption of innocence and therefore should be reviewed as fundamental error of constitutional dimension. *See Blue v. State,* 41 S.W.3d 129, 133 (Tex. Crim. App. 2000).

We affirm the judgment.


                                    Jack Carter
                                    Justice

Date Submitted:     September 26, 2012
Date Decided:       October 16, 2012

Publish