

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00542-CR

Fredy Eduardo **SALAZAR ESCOBAR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 7682
Honorable Kirsten B. Cohoon, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Liza A. Rodriguez, Justice
                Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: July 31, 2023

AFFIRMED

Appellant Fredy Eduardo Salazar Escobar challenges his judgment of conviction for aggravated assault with a deadly weapon. He argues the trial court erred by (1) improperly admitting expert testimony, (2) permitting the jury to view unadmitted physical evidence of a reconstructed taillight, and (3) failing to strike jurors who demonstrated bias against him. We affirm.

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

## BACKGROUND

Salazar Escobar was charged with aggravated assault with a deadly weapon after he repeatedly used his Chevy Avalanche pickup truck to ram the rear body of a Ford Focus driven by Brandon Wilcox. A jury found Salazar Escobar guilty, and the trial court sentenced him to eleven years with the Texas Department of Criminal Justice Institutional Division. Salazar Escobar now appeals.

## EXPERT TESTIMONY

Salazar Escobar argues the trial court erred in allowing expert testimony from Investigator James Walters because the State failed to provide proper notice pursuant to Texas Code of Criminal Procedure article 39.14(b). He further argues the trial court erred by permitting the investigator to testify as an expert on accident reconstruction even though he was not qualified as an expert.

### A. Lay Opinion Testimony Versus Expert Testimony

Article 39.14(b) requires the disclosure of a Rule 702 expert. *See* TEX. CODE CRIM. PROC. art. 39.14(b). No article 39.14(b) notice of a Rule 702 expert was required if Investigator Walters' testimony was not expert testimony. *See id.* We therefore first consider whether the trial court erred in permitting Investigator Walters to provide expert testimony.

"An appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Id.*

"There is no distinct line between lay opinion and expert opinion." *Id.* (citing *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002)). "Generally, a lay witness's observations which do not require significant expertise to interpret, and which are not based on a scientific theory, are

admissible if they satisfy the requirements of Texas Rule of Evidence 701." *Wade v. State*, 663 S.W.3d 175, 186 (Tex. Crim. App. 2022). "Under Rule 701 of the Texas Rules of Evidence, a lay witness can testify in the form of an opinion if the opinion is (a) rationally based on the witness's perceptions, and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue." *Id.* at 187. Expert testimony is admissible if: "(1) [t]he witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Rhomer*, 569 S.W.3d at 669 (quoting *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)) (internal quotation marks omitted); *see* TEX. R. EVID. 702. "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Id.* "When a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony." *Osbourn v. State*, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002).

### B. Whether Investigator Walters Provided Expert Testimony

Here, the parties conducted a voir dire examination of Investigator Walters outside the presence of the jury. During the examination, he testified he was not an expert in accident reconstruction and had not performed any accident reconstruction. Based on his testimony, the trial court concluded he was not an expert accident reconstructionist and limited his testimony to lay opinion testimony "as to what he found in the field of debris." Nevertheless, Salazar Escobar contends Investigator Walters improperly offered expert testimony when he testified to procedures he followed during his investigation.

A party challenging the admission of expert testimony in violation of Rule 702 must preserve the issue for appellate review by a timely, specific objection, obtain an adverse ruling (or

the trial court must refuse to rule), and the objection must comport with the defendant's complaint on appeal. *See* TEX. R. APP. P. 33.1(a); *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014) ("The complaining party must let the trial judge know what she wants and why she thinks she is entitled to it, and do so clearly enough for the judge to understand and at a time when the trial court is in a position to do something about it."). "We are not hyper-technical in examination of whether error was preserved, but the point of error on appeal must comport with the objection made at trial." *Bekendam*, 441 S.W.3d at 300; *see Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("Usually, for a complaint to be obvious without having been explicitly stated and still satisfy the purposes above, there have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be."). "In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time." *Clark*, 365 S.W.3d at 339.

Salazar Escobar contends Investigator Walters provided improper expert testimony when he testified:

- how specific pieces of the vehicles matched or fit together and which vehicles the pieces of debris belonged to;

- how he took measurements of both vehicles to match the damage on the vehicles; and

- his opinion that there was more than one impact based on the size of the debris field.[2]

A review of the record shows Salazar Escobar timely objected to this testimony, and therefore, he preserved these issues for our review. *See* TEX. R. APP. P. 33.1.

---

[2] Salazar Escobar mistakenly identifies other testimony as improper, but such testimony actually occurred during Investigator Walters' voir dire examination outside the presence of the jury. We therefore cannot conclude any such testimony "had a substantial and injurious effect or influence in determining the jury's verdict." *Washington v. State*, 485 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).

Turning to the challenged testimony, even assuming this testimony was improper expert testimony, the trial court's erroneous admission of evidence is not reversible when the same or similar testimony is admitted without objection before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see, e.g.*, *Washington*, 485 S.W.3d at 638 (concluding any error in admission of expert testimony harmless where testimony cumulative of testimony of other officers in case (citing *Leday*, 983 S.W.2d at 718)); *Young v. State*, 382 S.W.3d 414, 421 (Tex. App.—Texarkana 2012, pet. ref'd) (concluding any error by trial court in limiting cross-examination of expert harmless because same or similar testimony admitted without objection). Without objection, Investigator Walters repeatedly testified about details on how he matched or fit the debris with the vehicles. Before his testimony, Salazar Escobar also elicited testimony from Officer Ricardo Gomez on whether, in his experience, the damages on the two vehicles matched.[3] Investigator Walters further testified, without objection, he "noticed marks on the hood of [Salazar Escobar's] vehicle[,]" and he wanted to see if he "could match that height to anything on the [complainant's] car[.]" He therefore "measured the height from the ground" on both vehicles and testified "That was of a similar distance in height of one coming into the other." Salazar Escobar did not object to any of this testimony or otherwise obtain a running objection. Even if Salazar Escobar had objected, several State exhibits were admitted without objection and showed Investigator Walters using measuring tape to measure the impact location on both vehicles. *See Leday*, 983 S.W.2d at 718 (overruling evidentiary objection harmless error when other such evidence received without objection, before or after complained-of ruling).

---

[3] *See Wiseman v. State*, 394 S.W.3d 582, 587 (Tex. App.—Dallas 2012, pet. ref'd) ("Otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered 'opens the door' to the evidence." (quoting *Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997)).

As to Investigator Walters' testimony suggesting there was more than one impact, this given was provided multiple times without objection. For example, the complainant, Brandon Wilcox testified multiple times he was "rammed repeatedly." Again, Salazar Escobar did not object to this testimony or otherwise obtain a running objection. *See id.* Accordingly, any trial court error from overruling Salazar Escobar's objection to the admission of Investigator Walters' testimony was harmless and could not constitute reversible error. *See Washington*, 485 S.W.3d at 638; *Young*, 382 S.W.3d at 421.[4] We therefore overrule Salazar Escobar's first argument.

### TRIAL COURT INSTRUCTION ON UNADMITTED EVIDENCE IN VIEW OF JURY

Salazar Escobar argues the trial court erred by permitting the jury to view unadmitted physical evidence of a reconstructed taillight as they exited the courtroom. He further contends the trial court's instruction did not cure the error.

Because we presume a jury will follow a trial court's instructions, ordinarily a prompt instruction from the trial court will cure any resulting harm. *See, e.g.*, *Sandoval v. State*, No. AP-77,081, 2022 WL 17484313, at *20 (Tex. Crim. App. Dec. 7, 2022); *Griffin v. State*, 571 S.W.3d 404, 417 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). A party that concludes the trial court's instruction is insufficient to cure any resulting harm may move for a mistrial. *See Sandoval*, 2022 WL 17484313, at *20; *Griffin*, 571 S.W.3d at 417.

Here, during Investigator Walters' testimony, the prosecutor showed Walters exhibit nos. 146, 147, and 148. Walters identified the exhibits as parts of the "taillight off of the Ford Focus." Defense counsel objected on the grounds that exhibit 146 showed the pieces of the taillight reassembled together. The trial court sustained the objection, explaining the State could "introduce

---

[4] Because any error in the admission of the objected-to testimony was harmless, we need not consider whether Salazar Escobar received proper notice pursuant to article 39.14(b).

the parts" as evidence. After counsel for the State expressed confusion, the trial court asked the jury to leave the courtroom. Defense counsel then expressed to the trial court that as the jury exited the courtroom, it was "walking by looking at the reconstruction of [the taillight]." He then requested the trial court to "instruct the jury . . . that they disregard what they have seen. It's not admitted evidence." The trial court explained it had "already ruled the jury will disregard things not in evidence," and the trial court would reiterate that same instruction. After returning from a break, the trial court instructed the jury: "Remember that the only evidence you get are from the witness stand and the exhibits entered into evidence." Thereafter, the State offered each piece of the disassembled taillight as exhibits 146, 147, and 148. Investigator Walters identified them as pieces of the Ford Focus taillight he found in the debris field. Salazar Escobar did not object to this testimony and the court admitted them without objection.

The record shows the trial court sustained Salazar Escobar's objection and promptly instructed the jury the only evidence it could consider was from witnesses and exhibits admitted into evidence. We must therefore presume this instruction was followed, curing any potential harm. *See Sandoval*, 2022 WL 17484313, at *20; *Griffin*, 571 S.W.3d at 417. Even assuming this was not a proper instruction to disregard, Salazar Escobar points to no evidence in the record to show the jury disregarded the trial court's instruction or how the jury viewing the reconstructed taillight was so powerful it compelled a mistrial. *See Griffin*, 571 S.W.3d at 417 (explaining mistrial is "extreme remedy" that "should be exceedingly uncommon" and only required when the impropriety was "clearly calculated to emotionally inflame the jurors' minds"). Nor did Salazar Escobar move for a mistrial. *See Sandoval*, 2022 WL 17484313, at *20; *Griffin*, 571 S.W.3d at 417. He therefore received all of the relief he requested during the trial. *See, e.g.*, *Batalla v. State*, 533 S.W.3d 374, 376 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("In this instance, no request for an instruction to disregard was made and there was no motion for a mistrial. Because

the trial court afforded appellant all the relief he requested, nothing is presented for our review concerning this argument."); *see also* TEX. R. APP. P. 33.1.[5]

Salazar Escobar further contends the trial court erred in denying his motion for a new trial based on the jury viewing the reconstructed taillight. "A motion for new trial must be 'presented' to the trial court within 10 days of its filing." *Obella v. State*, 532 S.W.3d 405, 407 (Tex. Crim. App. 2017) (quoting TEX. R. APP. P. 21.6). Assuming for the sake of argument a new trial motion is proper where a party already received all of the relief they requested and identifies no grounds in Rule 21.3 of the Texas Rules of Appellate Procedure, the record contains no evidence of Salazar Escobar presenting the motion to the trial court. *See Richardson v. State*, 328 S.W.3d 61, 72 (Tex. App.—Fort Worth 2010, pet. ref'd) (trial court must be provided with actual notice of the motion which may include "such things as the judge's signature or notation on a proposed order or by a hearing date set on the docket"). The record shows the motion was filed with a form fiat never signed by the trial court, and the motion was not entered on the docket.[6]

Based on the record before us, Salazar Escobar received all of the relief he requested and the record does not otherwise show how the jury viewing the reconstructed taillight was clearly calculated to emotionally inflame the jurors' minds. Accordingly, we overrule this issue.

---

[5] Even if the trial court had overruled Salazar Escobar's objection, any error was otherwise harmless. Investigator Walters testified, without objection, he took the Ford Focus taillight and "took all those pieces that we found and I began seeing if pieces fit together. . . . And as they did, I would tape them together, make another bigger piece and then eventually – fit them together. I mean, that's what I did."

[6] Even if it were presented to the trial court, the motion challenges the jury's view of the unadmitted "reconstructed car," not the taillight. There were multiple references during trial testimony by Investigator Walters regarding his efforts to reconstruct, match, or fit together vehicle parts, and multiple exhibits showing the same thing. The motion's stated ground was therefore not "sufficient[ly] specific[] to make the trial court aware of the complaint" or was otherwise not "apparent from the context." TEX. R. APP. P. 33.1.

## JUROR BIAS

Salazar Escobar argues the trial court erred when it did not strike certain potential jurors after they demonstrated bias against him, and despite this error, the trial court empaneled them. We disagree.

A defendant may challenge a potential juror for cause who is biased or prejudiced against the defendant or the law applicable to the case. *Buntion v. State*, 482 S.W.3d 58, 83-84 (Tex. Crim. App. 2016)); *see, e.g.*, *Saldinger v. State*, 474 S.W.3d 1, 4 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). "The test is whether the prospective juror's bias or prejudice would substantially impair his ability to carry out his duties in accordance with his instructions and his oath." *Buntion*, 482 S.W.3d at 84. The defendant challenging the potential juror for cause must show the challenge is proper, and he "does not meet this burden until he shows that the law was explained to the potential juror and the potential juror understood the law but could not overcome her prejudice well enough to follow the law's requirements." *Id.* at 86-87. When assessing a trial court's ruling on a challenge for cause, we review for an abuse of discretion. *Id.* at 84. In making this decision, we consider the entire record to determine whether sufficient evidence exists to support the court's ruling. *Id.* "We afford great deference to the trial court's decision because the trial judge is present to observe the demeanor of prospective jurors and to listen to tones of voice. *Id.* "Particular deference is due when the prospective juror's answers are vacilating, unclear, or contradictory." *Id.* An appellant who fails to challenge a potential juror for cause fails to preserve the issue for our review. *See* TEX. R. APP. P. 33.1; *Buntion*, 482 S.W.3d at 69.

During voir dire, defense counsel informed potential jurors Salazar Escobar "is an undocumented immigrant. . . . Who is going to let that affect their ability to sit in judgment of him?" Potential juror no. 23 indicated "probably yes" and potential juror no. 27 stated "I would

have a problem with that."[7] Defense counsel then asked the potential jurors whether they would "be okay with" a two-year sentence if the law called for that punishment. Potential juror no. 23 indicated the punishment was fine, but Salazar Escobar should be "sent back to the country he came from"; potential juror no. 27 agreed. After defense counsel identified a number of jurors he wanted to consider for individual voir dire, the trial court indicated it could not "call up every single juror" and told the parties they had fifteen minutes for individual voir dire. Defense counsel indicated she did not "want to make [potential jurors] uncomfortable, let me talk to them." After asking who the State would strike, the trial court turned to defense counsel and asked which potential jurors she believed were objectionable. Defense counsel replied by objecting to empaneling potential juror no. 23, and the State responded by stating it could not agree to striking 23. The trial court then called potential juror no. 23 for individual voir dire examination. At the voir dire's conclusion, defense counsel withdrew her objection; defense counsel did not call potential juror no. 27 for individual voir dire examination.[8]

The trial court then provided both sides fifteen minutes to exercise peremptory strikes. Defense counsel did not use a peremptory strike on either potential juror. After a brief recess, the trial court empaneled the jury and asked whether there was any objection to any member of the jury; defense counsel responded, "No, ma'am."

Here, Salazar Escobar has failed to preserve for review any alleged trial court error based on juror bias. Salazar Escobar took potential juror no. 23 on voir dire, and he ultimately did not object to empaneling the potential juror and did not elect to use a peremptory strike. Salazar Escobar argues he did not take potential juror no. 27 on voir dire because the trial court limited the

---

[7] Other jurors also indicated they would take issue with that but Salazar challenges only empaneled jurors 11 and 12.

[8] Other jurors were stricken by the court after individual voir dire examination.

amount of time the parties were permitted to take potential jurors on voir dire. However, Salazar Escobar did not strike potential juror no. 27 peremptorily either or, upon using all peremptory strikes, request more. *See Buntion*, 482 S.W.3d at 83 ("Error is preserved for review by this Court only if appellant (1) used all of his peremptory strikes, (2) asked for and was refused additional peremptory strikes, and (3) was then forced to take an identified objectionable juror whom appellant would not otherwise have accepted had the trial court granted his challenge for cause (or granted him additional peremptory strikes so that he might strike the juror)."). Finally, Salazar Escobar explicitly stated he did not object to the empaneling of the jury that included both potential jurors. *See id.* at 69 (concluding appellant did not preserve for review argument that trial court abused discretion by not disqualifying, excusing, or removing juror with "psychological instability" based on personal tragedy that was later empaneled because defense counsel did not challenge potential juror for cause; object to the trial court's decision not to disqualify, excuse, or remove potential juror; or otherwise seek to exclude potential juror from jury during individual voir dire or at the special hearing; and did not specifically object to jury as seated).

Because Salazar Escobar has failed to preserve for review any alleged trial court error based on juror bias, we overrule the point of error. *See id.* ("Appellant does not assert, and the record does not reflect, that he objected to [juror's] jury service at any time during the trial. Therefore, appellant did not preserve this point of error.").

**CONCLUSION**

The judgment is affirmed.

Luz Elena D. Chapa, Justice

Do Not Publish