

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00068-CR
No. 02-24-00069-CR

_____

SETH CODY WAKEFIELD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 90th District Court
Young County, Texas
Trial Court Nos. CR11993, CR11994

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Seth Cody Wakefield appeals his two sexual-assault-of-a-child convictions[1] and life sentences. In two issues, which we construe as three, he complains that (1) the State's violation of Texas Code of Criminal Procedure Article 39.14 required dismissal of his cases; (2) the Article 39.14 violation was grounds for a new trial; and (3) the trial court erred in instructing the jury regarding the possibility of stacking any punishment assessed for his two offenses. Because we conclude that Wakefield either invited, waived, or failed to show the trial-court error of which he complains, we will affirm.

## I. Background

Wakefield does not challenge the sufficiency of the evidence to support his convictions, so we need not recount the facts of the offenses he was convicted of committing and give only a brief factual and procedural background to frame his appellate issues.

In 2022, then-fourteen-year-old Sydney[2] reported that Wakefield, an adult, had been "having sex with" her. Sergeant Dustin Hudson with the Olney Police Department

---

[1]Wakefield was charged with two counts of sexual assault of a child in two separate cases with different case numbers.

[2]To protect the identities of the minor children involved in this case, *see* Tex. R. App. P. 9.10(a)(3), we refer to them and their relatives—except for Wakefield—by pseudonyms.

received the statewide intake,[3] spoke to Sydney, and made arrangements for her to undergo a SANE (sexual abuse nurse examiner) exam and a forensic interview. Sydney told Sergeant Hudson that she had texted with her aunt about Wakefield's abusing her. During the forensic interview, she mentioned that she had also confided in a friend who lived in Florida about the abuse. Sergeant Hudson took screenshots of Sydney's phone displaying the aunt's and friend's contact information.

Sergeant Hudson and his chief searched Wakefield's home and found certain items indicative of sexual activity that Sydney had mentioned in her forensic interview. Sergeant Hudson arrested Wakefield, and a grand jury indicted him on two counts of sexual assault of a child.

During his trial, after a jury had been impaneled but before the State's opening statement, Wakefield filed a motion to dismiss all the charges against him, alleging that the State had failed to disclose certain evidence that it was required to disclose under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), and Texas Code of Criminal Procedure Article 39.14. The trial court heard the motion outside the jury's presence and denied it. Wakefield later reurged his motion to dismiss,[4] but he did not move for a continuance.

---

[3]Sergeant Hudson testified at trial that "a statewide intake . . . is an email program where [sexual abuse is] reported through the statewide abuse hotline and then emailed to investigators based off the address and where the event happened."

[4]Wakefield reurged his motion after Sergeant Hudson testified that in 2022 and again in 2023, Sydney had emailed him screenshots of text-message conversations

The jury found Wakefield guilty of sexual assault of a child as charged in the indictments. After hearing more evidence and arguments at the trial on punishment, the jury assessed Wakefield's punishment at life in prison with $10,000 fines in each case, and he was sentenced accordingly. On the State's motion, the trial court ordered the sentences to be served consecutively. *See* Tex. Penal Code Ann. § 3.03(b)(2)(A).[5]

Wakefield filed a motion for new trial and motion in arrest of judgment in each case, alleging that new evidence, "including but not limited to undisclosed text messages" referred to during the trial of the case "and other missing records, controverting the facts presented during the trial," had "come to light" and "that presentation and consideration of said evidence would have been beneficial at trial had it been known or available at that time." The trial court held a hearing[6] and overruled the motions.

---

between herself and her aunt. He testified that those screenshots were then printed off and filed "in the back of the case file" at the police department but "were never sent to the district attorney."

[5]This statute has since been amended. Act of May 25, 2025, 89th Leg., R.S., ch. 557, H.B. 1422, § 12. But the act amending the statute does not take effect until September 1, 2025. *See id.* § 24.

[6]Sixty-three days after his sentence had been imposed in open court, Wakefield filed an amended motion for new trial and motion in arrest of judgment. Such motions were untimely, *see* Tex. R. App. P. 21.4(b), 22.3, and the trial court appropriately declined to hear them.

4

**II. Analysis**

In Wakefield's first issue, which we construe as two separate issues, he argues that (1) the trial court erred in failing to grant his motions to dismiss or, (2) in the alternative, his motions for new trial "for failure to timely produce evidence in accordance with **Article 39.14(h)**." In his final issue, he argues that (3) he "suffered egregious harm when the trial court erred in instructing the jury regarding the possibility of stacking any punishment assessed by the jury for the two offenses for which he was convicted." For the reasons that follow, we reject these arguments.

### A. Wakefield's Motion[7] to Dismiss

Wakefield first argues that the trial court "abused its discretion by denying Wakefield's motion[] to dismiss for the State's failure to timely disclose evidence, specifically a number of text messages, made available to the defense after trial began in a first instance, and after the jury's verdict and assessment of punishment in the second instance." Assuming without deciding that Article 39.14 was violated in this case, Wakefield's argument fails for a fundamental reason: he failed to preserve this complaint.

Dismissal of an indictment is "a drastic measure only to be used in the most extraordinary circumstances." *State v. Mungia*, 119 S.W.3d 814, 817 (Tex. Crim. App.

---

[7]Wakefield refers on appeal to his "motions" to dismiss. Wakefield filed the same motion in each trial court cause number. We will treat them on appeal as one motion.

5

2003) (quoting *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995)). To preserve this alleged Article 39.14 error, Wakefield was required to seek a continuance below, which he did not do.[8] *See Rodriguez v. State*, 630 S.W.3d 522, 524–25 (Tex. App.—Waco 2021, no pet.) (holding that defendant waived Article 39.14(a) complaint by not requesting continuance when State disclosed document for first time on first day of trial); *Siebert v. State*, No. 05-18-01386-CR, 2020 WL 5542544, at *6 (Tex. App.—Dallas Sept. 16, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding that defendant did not preserve error under *Brady* and Article 39.14 because of her failure to request continuance after untimely disclosure); *O'Kane v. State*, No. 04-16-00526-CR, 2017 WL 3159462, at *3 (Tex. App.—San Antonio July 26, 2017, no pet.) (mem. op., not designated for publication) (holding that "[b]y failing to file a written, sworn motion for continuance, [the defendant] failed to preserve error" based on the State's failure to comply with Article 39.14(h)); *see also Barrientos v. State*, No. 05-14-00041-CR, 2015 WL 1089670, at *4 (Tex. App.—Dallas Mar. 10, 2015, no pet.) (mem. op., not designated for publication) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise.").

---

[8]Because it is a systemic requirement, this court should independently review error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Wakefield neither addresses the requirement of requesting a continuance nor explains his failure to do so. Accordingly, Wakefield did not preserve his complaint for appellate review.

### B. Wakefield's New-Trial Motions

As for the trial court's denial of Wakefield's initial and timely filed new-trial motion, such a motion based on newly discovered evidence is governed by Texas Code of Criminal Procedure Article 40.001. *See* Tex. Code Crim. Proc. Ann. art. 40.001 ("A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."). "A trial court has discretion to decide whether to grant a new trial based upon newly discovered evidence, and its ruling will not be reversed absent an abuse of discretion." *Frank v. State*, 183 S.W.3d 63, 71 (Tex. App.—Fort Worth 2005, pet. ref'd). To obtain a new trial based on newly discovered evidence, a defendant must satisfy each part of a four-pronged test:

> (1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;
>
> (2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;
>
> (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and
>
> (4) the new evidence is probably true and will probably bring about a different result in a new trial.

7

*State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017). Because Wakefield has not satisfied at least one of the prongs—the third—he has failed to show that the trial court abused its discretion in denying his new-trial motion.

That is, even if we were to assume that every single text message in Wakefield's new-trial exhibit[9]—other than what was admitted at trial—was unknown or unavailable to him at the time of trial and that Wakefield's failure to discover or obtain the new evidence was not due to his lack of due diligence, we still could not sustain this issue on appeal. Our review of the "newly discovered" text messages in Wakefield's new-trial exhibit reveals that they are largely cumulative of the texts that were admitted at trial. Wakefield contends that, had the evidence of the text messages been available for his scrutiny, "he might have been better able to evaluate [Sydney]'s testimony and perhaps better able to develop evidence that [she] had been coached in her story, thereby undermining her credibility" and that, had the text messages Sydney emailed to Sergeant

---

[9]The only evidence Wakefield offered at the new-trial hearing was a single, unitary exhibit that he described as "almost 30 pages . . . of texts that were intermittently spattered with a few of the same ideas that we would have heard in the trial, but there are absolutely some of these texts that were given to us weeks after the trial from an archived computer system that [Sergeant] Hudson found." When the trial court asked, "Didn't the jury have some of this?" the State responded, "Some of it, yes. And like [Wakefield] stated, some of this was found after the trial, so neither side had some of it." Later in the hearing, the trial court told Wakefield that "a lot of that was before the jury," and Wakefield responded, "Not all of it, Judge. . . . And certainly not all these texts." But Wakefield never made clear which text messages were discovered after trial, even when the State offered at the hearing to "go through here page by page and tell [the trial court] exactly what [the jury] did or didn't hear."

Hudson been timely provided, "they could have formed the basis and structure for more effective cross examination of [Sydney] to show the evolution of her claims against Wakefield." In other words, the newly discovered text messages would have been merely impeaching evidence intended to "dispute, disparage, deny, or contradict" Sydney's testimony. *See Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992) (quoting *Impeachment, Black's Law Dictionary* (5th ed. 1990)). We have repeatedly held that evidence of this sort will not support the granting of a new trial. *See Brown v. State*, No. 2-03-289-CR, 2004 WL 1944722, at *7 (Tex. App.—Fort Worth Aug. 30, 2004, no pet.) (mem. op., not designated for publication) (holding that newly discovered evidence that would only have diminished a witness's credibility was not sufficient to grant a new trial); *Bridges v. State*, No. 2-03-011-CR, 2003 WL 21986332, at *2 (Tex. App.—Fort Worth Aug. 21, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that impeachment evidence that did not indicate that a witness was mistaken about a matter material to the case not sufficient to grant a new trial). Wakefield has not satisfied the third prong of the *Arizmendi* test.[10]

In ruling on a new-trial motion, the trial court is the exclusive judge of the credibility of the evidence, regardless of whether the evidence is controverted, and its ruling will be reversed only for an abuse of discretion, that is, if it is arbitrary or

---

[10]Our holding is not meant to suggest that he satisfied any of the other prongs, but in the interest of brevity we focus on only one of them, since the law requires that all four prongs be satisfied. *See Arizmendi*, 519 S.W.3d at 149.

unsupported by any reasonable view of the evidence. *Najar v. State*, 618 S.W.3d 366, 372 (Tex. Crim. App. 2021). We therefore hold that the trial court did not abuse its discretion in denying Wakefield's new-trial motion and in allowing his (untimely in any event) amended new-trial motion to be overruled by operation of law. We overrule his first issue.

## C. The Trial Court's Oral Jury Instruction on Stacking Sentences

In his remaining issue, Wakefield argues that he "suffered egregious harm when the trial court erred in instructing the jury regarding the possibility of stacking Wakefield's punishment for the two offenses for which he was convicted." The specific instruction of which he complains is the following, which the trial court gave orally to the jury before reading the jury charge on punishment:

> And also, the [S]tate has filed what's called a motion to stack, or run these concurrent, but that's purely my purview.
>
> [WAKEFIELD]: Consecutive, Your Honor.
>
> [DISTRICT ATTORNEY]: Consecutive.
>
> THE COURT: Consecutive, one on top of each other. But that's not anything that affects you; that's strictly my decision. So whatever number you pick in [case number] 93 and whatever you pick in [case number] 94, when y'all are finished with that, then I'll hear argument from counsel as to whether I should make those consecutive or they run together. Y'all have no part of that. That's just strictly a legal issue, not a factual issue.

The State argues that, if this instruction was error, then it was invited and Wakefield cannot complain of it here. We agree. At the trial on punishment,

10

immediately before the trial court gave the above-quoted instruction to the jury, this colloquy occurred between Wakefield and the trial court judge:

> [WAKEFIELD]: I don't know how the Court intends to instruct them . . . whether they can be stacked or not, I think they got to know something about that.
>
> THE COURT: I think that's a legal issue. I can tell them that though.
>
> [WAKEFIELD]: I think they have to know, yeah. I want it to be part of it, because they are subject to stacking.

If a party affirmatively seeks some trial-court action, then that party cannot later contend that the court acted erroneously. *Woodall v. State*, 336 S.W.3d 634, 644 n.12 (Tex. Crim. App. 2011). "In other words, a party is estopped from seeking appellate relief based on error that it induced." *Id.* at 644. We hold that Wakefield invited the trial-court action on which he bases his second issue.

Moreover, if Wakefield was dissatisfied with the instruction that the trial court gave the jury, then he failed to preserve error by objecting to it. Generally, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling.[11] Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*,

---

[11]Wakefield briefs this issue as unpreserved jury-charge error under *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex. Crim. App. 1985) (op. on reh'g). We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171; *see* Tex. Code Crim. Proc.

623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Here, Wakefield did not object to the trial court's oral jury instruction and thus forfeited any error in it. *See Nelson v. State*, 661 S.W.2d 122, 124 (Tex. Crim. App. 1983) (stating that "[n]o error [wa]s preserved" when no objection was made to the trial court's instruction, "[r]egardless of the sufficiency of the instruction, the effectiveness of which [wa]s questionable"). We overrule his second issue.

## III. Conclusion

Having overruled all of Wakefield's appellate issues, we affirm the trial court's judgments.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 17, 2025

---

Ann. art. 36.19. But, as Wakefield concedes in his brief, "[t]here were no *written* instructions given in the jury charge regarding stacked sentencing." We therefore will not review the trial court's oral instruction, given separate and apart from the jury charge, as jury-charge error. *See Fuentes v. State*, 991 S.W.2d 267, 276 (Tex. Crim. App. 1999) (expressly declining "to extend *Almanza* beyond the context of the jury charge"); *Wright v. State*, No. 02-22-00035-CR, 2023 WL 2703223, at *5–6 (Tex. App.—Fort Worth Mar. 30, 2023, pet. ref'd) (mem. op., not designated for publication) (rejecting appellant's "jury-charge error" argument and reviewing trial court's comments, made before reading charge to jury, under "non-jury-charge error-preservation principles"); *Young v. State*, 382 S.W.3d 414, 423–24 (Tex. App.—Texarkana 2012, pet. ref'd) (holding that trial court's oral instruction to jury was "trial error," rather than jury-charge error, and that appellant was required to object to preserve error for appellate review).